Eichorn v. The Missouri, Kansas & Texas Railway Company, *Appellant.*

Division Two, November 19, 1895.

1. **Negligence:** QUESTION OF FACT, WHEN. The court can not decide as a matter of law that the facts in evidence constitute negligence, when reasonable men may fairly differ on the question.

2. ——: QUESTION OF LAW, WHEN. It is only when the facts are of such a character that all reasonable men must draw the same inference that it becomes the duty of the court to decide the question of negligence as one of law.

3. ——: INSTRUCTION. In an action by a female plaintiff against a railroad for injuries claimed to have been caused by the defendant's negligence the court defined negligence to mean the lack of such care and caution as reasonable and prudent "men" would exercise under like circumstances. *Held,* that "men" embraced "women," and that the instruction was not objectionable because of the use of the former term instead of the latter.

4. **Carrier:** RAILROAD: PASSENGERS. It is the duty of a railway carrier to provide safe and suitable means for its passengers to get on and off its trains and it will be responsible for injuries occasioned by its failure to do so.

*Appeal from Cooper Circuit Court.*—Hon. D. W. Shackleford, Judge.

Affirmed.

*Jackson & Montgomery* for appellant.

(1) The court erred in giving the plaintiff's instructions. *First.* They they did not correctly state the duty and liability of defendant. *Second.* They did not set forth the facts necessary to constitute contributory negligence. *Moore v. Railroad,* 29 S. W. Rep. 9. *Third.* They were inconsistent with the one given for defendant. *Fourth.* They were not warranted by the

evidence.    (2) The court erred in refusing defendant's instructions numbers 2, 3, 4, and 6.    They correctly set forth the duties and liabilities of the parties, and presented to the jury the proper rule as to the effect of plaintiff's own conduct.    (3) The evidence failed to establish any liability by defendant as charged in the petition and the first or peremptory instruction prayed by defendant should have been given.    Defendant could select such place and make such arrangements as it wished for the accommodation of passengers.    If they were insufficient, and anyone was injured in consequence thereof, he might recover, but because he was dissatisfied with the provision made, he could not go to another place and then claim damages because defendant had not made that other place convenient and safe.    *Railroad v. Coleman*, 28 Mich. 440; *Railroad v. Cavenesse*, 48 Ark. 106;   *Graham v. Railroad*, 39 Fed. Rep. 596;   *Sturgiss v. Railroad*, 72 Mich. 619;   *Zoebisch v. Tarbell*, 10 Allen, 385;   *Comley v. Railroad*, 12 Atl. Rep. 496;   *Drake v. Railroad*, 137 Pa. St. 352;   *Bancroft v. Railroad*, 97 Mass. 278;   *Eckerd v. Railroad*, 70 Iowa, 353.

*J. R. Walker* and *Silver & Brown* for respondent.

(1) It was defendant's duty to have a platform or other proper means of egress and access at its station of Harriston where plaintiff boarded the train, and its failure in the foregoing respects was negligence.   *Stafford v. Railroad*, 22 Mo. App. 333; *Railroad v. Vinson*, 24 S. W. Rep. 956;   *McSloop v. Railroad*, 59 Fed. Rep. 431;   *Railroad v. Wingate*, 37 N. E. Rep. 274;   *Foy v. Railroad*, 114 Eng. C. L. 225;   *Fullerton v. Fordyce*, 121 Mo. 2.    (2) The above principle is conceded in cases cited by the appellant's counsel in his brief, and can not be seriously questioned by him.   *Railroad v.*

*Coleman*, 28 Mich. 441; *Drake v. Railroad*, 137 Pa. St. 352. It is said in *Raben v. Railroad*, 74 Iowa, 738, "the contract of the carrier is that he will carry the passenger safely and in a proper carriage, and afford him convenient and safe means for entering and alighting from the vehicle in which he carries him." (3) The plaintiff, when she received the injury complained of, occupied the relation of passenger to the defendant company. *Schepers v. Union Depot Co.*, 29 S. W. Rep. 712; *Smith v. Railroad*, 32 Minn. 2; Thompson on Carriers of Passengers, pp. 42, 43. It is error for the court to instruct the jury what circumstances do or do not constitute ordinary care. *Railroad v. Elliott*, 98 Ill. 481. (4) Where the facts claimed to constitute negligence are disputed, or admit of different constructions or inferences, the question is one for the jury. *Norton v. Ittner*, 56 Mo. 351; *Barry v. Railroad*, 98 Mo. 62; *Weber v. Railroad*, 100 Mo. 195; *Roddy v. Railroad*, 104 Mo. 250; *Lynch v. Railroad*, 112 Mo. 421. And the same is true of contributory negligence. *Church v. Railroad*, 119 Mo. 214. The very fact of itself that the case is one for the jury necessarily disables the trial court from stating in its instructions what facts constitute contributory negligence. *Railroad v. Elliott*, 98 Ill. 481, *supra*. (5) Defendant's refused instructions were, rightly refused. They ignored plaintiff's knowledge of the alleged requirement or habit for passengers to get on its train on the west side, etc. *McDonald v. Railroad*, 26 Iowa, 125 (per DILLON, C. J.).

GANTT, P. J.—This is an action to recover damages resulting from personal injuries received by the plaintiff, a married woman, in attempting to board one of the defendant's passenger trains at Harriston

Station on defendant's railroad, in Cooper county, Missouri, on February 19, 1892.

The petition alleges that on said nineteenth day of February and for a long time prior thereto the defendant had carelessly and negligently failed to construct and maintain any platform or provide any other means suitable and safe to enable passengers to get on and off the cars of the defendant at said station; that the plaintiff took passage on one of defendant's passenger trains at Harriston to go to Pilot Grove; "that plaintiff was at the time pregnant with child, and while getting aboard of the defendant's train as aforesaid, through the carelessness and negligence of the defendant, in not having any platform or other suitable and safe means for getting onto defendant's said passenger train, the plaintiff, without any fault on her part, slipped from one of the steps of one of the cars in defendant's said passenger train, and was strained and wounded in the spine, and the right side and right arm, leg and foot, by reason of which, etc.," to her damage in the sum of $10,000, for which she asked judgment. The answer was a general denial, and a plea of contributory negligence, to which the plaintiff replied in a general denial.

Upon the trial the plaintiff got a verdict and judgment for $3,000. Defendant having unsuccessfully moved for a new trial brings the case here by appeal.

At the trial the following facts were substantially established: The defendant had a station in Cooper county called Harriston, at which it had constructed a depot on the west side of its road. The point where the depot building stood at the station was low ground, and the depot was built on piles. Harriston is a small village of probably six or eight houses, all of which stand on the east side of the railroad, fronting on a street adjacent to and parallel with the right of way of

the railroad.    Some time in the month of September, 1891, this depot building was destroyed by fire.    Thereafter the trains stopped *at a point north of where the depot had stood originally*, and  at a place where a county road crossed the railroad track.    At this point the evidence showed that it was from thirty inches to three feet from the ground to the lowest step on the passenger coaches.

Harriston was a regular station on the line of this railroad.    Two of their passenger trains, the one going north at nearly noon, and the one going south at about 5 o'clock in the afternoon, stopped regularly to receive and  discharge passengers.    No platform  or  other means of any kind had been erected or provided by the railroad company to aid passengers in getting on and off its cars after the depot was burned.    A small pine box had at one time been placed by one of the neighbors on the west side of the track that passengers might step on in order to get on and off the cars.    Some time prior to the nineteenth day of February, 1892, the wife of the witness Nixon had stepped on this box in attempting to get on the train and had crushed it, and on the nineteenth day of February, and for some time prior thereto, this box had not been in use, and was not at the place.    There was nothing in any way to designate the place for passengers to get on and off on either side of the road *at that point*.    The county road crossed the railroad at this place.    The ground on either side of the track was about the same, and it was apparently no safer to get on and off on one side of the track than the other, and the evidence tended strongly to show that, after the burning of the depot, passengers got on and off the train at this point on both sides of the road.    The porters on the trains, when they would stop at Harriston station, would get down on either side and help passengers on from which ever

side they might be standing, and would also help them off on either side.

On the nineteenth day of February, 1892, the plaintiff, Mrs. Eichorn, in company with a neighbor lady, Mrs. Meisel, started to take the train at Harriston station for Pilot Grove, another station a few miles distant on the line of this road. This was about noon, and the regular passenger train stopped at the station. It was a damp and disagreeable day and the plaintiff and Mrs. Meisel waited in the plaintiff's house for the arrival of the train. They did not leave the house until the train had approached very near to the place where it usually stopped. They were hurrying toward that place when Mr. Sly, who was the postmaster, discovered them and thinking that they would be in danger of being hurt, if they tried to cross to the west side, signaled and called to them not to attempt to cross, but to remain on the east side. Mrs. Meisel, testified that it was their intention to cross over to the west side and there get on the train, and that they would have done so but for the warning of Mr. Sly, and the nearness of the train, and because they were late and did not think it safe to attempt to cross to the west side they remained and attempted to board the train from the east side. The plaintiff, however, testified that she did not intend to go over, or rather that she had not thought of that because she didn't like to get on the other (west) side, because there were always people in the blacksmith shop looking at the ladies get on the cars, and she preferred to get on from the east side so that her back would be toward those people. She admitted that it was a fact that she was late in getting out, but said that if she had wanted to have gotten up on the west side, she could have gone around the train after it stopped. Mrs. Meisel preceded the

plaintiff into the car, and boarded it without any difficulty.

The plaintiff, in attempting to get on the train, took hold of the iron bar with her right hand, placed her right foot on the step, which was some thirty inches or three feet high, and in attempting to get on the cars she slipped and fell from the steps, and in falling sprained her ankle and twisted her body and spine, and the jar and shock seriously injured her and caused her much suffering, and resulted in a permanent injury to the spine, which has produced a partial paralysis of her entire right side. She attempted to get on the cars from the east side, the side next to her home, which was only a little distance away. Plaintiff testified that she did not see either the conductor or porter of the train come out of the cars, or standing on either side of the train, at the time she attempted to get aboard. After her foot had slipped and she had fallen, she testified that the porter came out of the cars, stepped down on the east side, where she was standing, and aided her in getting aboard the cars.

The evidence tends to show that prior to this date the plaintiff was a strong, healthy Norwegian woman, who, unaided, had done all of her own housework; and the evidence further shows that immediately upon entering the car she complained of having sprained her ankle; that her right foot began to swell, and so pained her that she was forced to unbutton her shoe. A few days afterward she began to discover pains in her spine, just below the shoulders, and when she would attempt to lift any article of weight, or lean back suddenly in her chair, the pain in her spine was so intense that it would bring on spells of fainting and sickness. Her family physician, Dr. Cox, and Drs. Evans and Hurt, examined her on various occasions prior to the date of the trial, and pronounced her spine permanently

affected, and that this affection of the spine resulted in the partial paralysis of her entire right side.

Upon the conclusion of the evidence the court gave the following instructions for the plaintiff, over the defendant's objections:

"1.    The court instructs the jury that if they believe from the evidence that Harriston was a station on the defendant's railroad, at which defendant habitually received and discharged passengers, and that on the nineteenth day of February, 1892, one of the defendant's passenger trains stopped at Harriston for the purpose of receiving passengers, and if you further believe from the evidence that plaintiff got aboard of said train at Harriston, and took passage to Pilot Grove station, on defendant's railroad, paying the regular fare therefor, and if you further believe from the evidence that plaintiff, while getting aboard said train, through the carelessness and negligence of the defendant, in not having any platform or other reasonably safe and suitable means for getting onto said train, and without any fault or negligence on her part, the plaintiff slipped from one of the steps of one of the cars in said train, and was strained and wounded in the spine and right side, and right arm, leg, and foot, then you will find the issues for the plaintiff, unless you further find from the evidence that plaintiff's injuries, if any, were caused by her own negligence contributing directly thereto; and the jury are instructed that the burden of proving such contributory negligence rests on the defendant.

"2.    The jury are instructed that the words 'carelessly,' 'negligently,' and 'negligence,' used in the instruction, mean the lack of such care and caution as reasonable and prudent men would exercise under like circumstances.

"3.    The court instructs the jury that if they find the issues for the plaintiff, they will assess her damages

at such sum as they believe, from all the evidence, will compensate her for the pain and anguish in mind and body they may believe from the evidence she has suffered, if any, together with such sum as will compensate her for any permanent injury to her spine, right side, and right arm, leg, and foot, they may believe from all the evidence she has sustained, if any, by reason of the injury in question, not to exceed, in all, the sum of $10,000.

"4.    The court instructs the jury that it was the duty of the defendant, as a common carrier of passengers, to provide reasonably safe and suitable means at its regular station, where it habitually received and discharged passengers, for such passengers to get on and off its cars at such station, and if you find from the evidence that defendant had failed and neglected to provide any reasonably safe and suitable means at its station of Harriston, and that said station was a regular station on its road, at which it habitually received and discharged passengers, then the court instructs the jury that such failure constituted negligence on the part of the defendant; and if you further find from the evidence that plaintiff, in attempting to get on a passenger train of defendant at said station of Harriston, for the purpose of taking passage to Pilot Grove station on defendant's road, slipped and injured herself by reason of the failure of the defendant to have reasonably safe and suitable means at said station to enable passengers to get onto defendant's trains, then your verdict must be for the plaintiff, unless you further find that plaintiff, by her own negligence, directly contributed thereto."

Whereupon the defendant prayed the court to instruct the jury as follows, to wit:

"1.    The court instructs the jury that under the evidence in this case your finding must be for the defendant.

"2.  The court instructs the jury that if you believe from the evidence, that the plaintiff at the time she claims to have been injured was attempting to board one of defendant's trains upon the side opposite that at which passengers generally got on and off of trains, and opposite the side where the trainmen were, then the plaintiff can not recover, and your verdict must be for the defendant.

"3.  The court instructs the jury, that if you believe from the evidence, that at the time and place plaintiff claims to have been injured, she was attempting to board one of defendant's trains upon the side opposite to that where the depot and platform had been before it was burned, and where passengers were in the habit of getting on and off of trains at that station, both before and after the burning of this depot, and opposite to where the trainmen were accustomed to be while their train was at that station, then it is immaterial to this case what may have been the condition of the platform at said station, or whether or not there was any platform at that station, and you will disregard all evidence touching the condition, or the absence of such platform, and return a verdict for the defendant.

"4.  If you believe from the evidence that the plaintiff was late in reaching the train on which she intended to take passage, on the day on which she claims to have been injured, and that by reason of being late, she did not go upon the side of said train nor to the place where the trainmen were, and where passengers were in the habit of going, in order to get on or off of the cars at Harriston station, but attempted voluntarily to get upon one of the cars in said train upon the opposite side and in doing so was injured, then said injury was the result of her own action and

the defendant is not liable on account thereof, and your finding should be for the defendant.

"5.   The court instructs the jury that if you believe from the evidence that the plaintiff was injured in attempting to get upon one of defendant's trains at Harriston station, and that such injury was occasioned in whole or in part by the plaintiff's failure or neglect to exercise such care, caution, and foresight as a woman of ordinary care, caution, and foresight would have exercised under the circumstances surrounding the plaintiff at the time, then such injury was due to the plaintiff's negligence, and your verdict must be for the defendant.

"6.   If you believe from the evidence that the plaintiff attempted to get upon the train on the side and at a place different from that where the trainmen at the time were, and were in the habit of being at that station, and different from that where passengers were in the habit of getting on and off the cars at that station, and that it was difficult to get upon a car at the place where the plaintiff attempted to do so, and that at such place a woman of ordinary care and prudence, situated as the plaintiff then was, would not have attempted to have gotten on the car at that place, and that whatever injury the plaintiff received resulted wholly or partially from her attempting to get on the car at that place, then it is immaterial that there was not any platform at that station, or that the absence of such platform may have concurred to any extent in producing said injury, and you will find for defendant."

Of which the court gave number 5 and refused the others.

I.   Under the head of "minor objections" to the instructions given for the plaintiff, counsel for defendant asserts that the first instruction was erroneous

because it failed to explain to the jury what constituted "contributory negligence," and cites *Moore v. Railroad*, 126 Mo. 265, as authority for his position.

This is a misapprehension of *Moore v. Railroad*. An examination of that case will show that defendant vainly endeavored to get the court to declare the law to be that if the plaintiff in that case was driving a horse he knew or had reason to believe would become frightened and unmanageable at the sight of an engine and cars and had an opportunity to turn into a side street and neglected to do so when he knew the train was coming, then he was guilty of contributory negligence. After having refused these instructions *asked by defendant* the court in that case contented itself with a general instruction that the burden was on defendant to show plaintiff's contributory negligence and that plaintiff's conduct was not that of an ordinarily prudent person under similar circumstances.

Under the facts of that case Judge BURGESS, speaking for the court, said: This "instruction should have been refused. It had no place in the case, *especially after all of the defendant's instructions had been refused* as to the burden of proof on the defense of contributory negligence, and, if necessary to have been given, it should have set forth the facts necessary, under the evidence, to constitute contributory negligence upon the part of the plaintiff." (P. 278.) These remarks were made only to emphasize our sense of the injustice of placing the plaintiff's case fairly and fully before the jury but retiring and *dismissing the defendant's case with a general platitude*. We held that if the fact was established that the plaintiff knowingly drove his team along a street upon which he was certain to encounter a train of cars and knew *his* team would be frightened thereat, he was courting danger,

and he could not recover if he had opportunity to avoid the train.

What we said in that case was not intended as an innovation upon the law of negligence so often declared by this court. That opinion is not an invitation to the trial courts to invade the province of the jury and decide what inference the jury shall draw from the evidence when reasonable men may fairly differ upon the question whether the facts constitute negligence or not. It is only when the facts are such that all reasonable men must draw the same inference from them that it becomes the duty of the court to decide the question. *Railroad v. Ives*, 144 U. S. 408; *O'Mellia v. Railroad*, 115 Mo. 205.

Nor does that case collide with the oft repeated rule that the burden of showing contributory negligence is upon the defendant, and it is his duty to pray for appropriate instructions.

The instructions for the plaintiff, taken with the fifth instruction given for defendant, very fairly present the only controverted issue in this case.

It was the plain duty of the defendant to provide suitable, safe, and convenient means for the ingress and egress of its passengers into and out of its trains. It had wholly failed to comply with this obligation. Although its depot had been burned in September it had never rebuilt it or provided even a safe temporary platform but required passengers to alight from and board its trains at this station in an open field.

It seeks now to palliate this indifference to the safety and comfort of those seeking to use its trains at this station by charging the plaintiff with negligence in attempting to get on from the east side of the train instead of the west, and asserts that it was its custom to place its servants upon the west side to assist passen-

gers in getting on and off the trains, but the evidence does not sustain this claim.

It was shown by all the witnesses, both for plaintiff and defendant that passengers got off and on on either side; that there was nothing whatever to indicate any more preparation to receive and assist the passengers on or off the train on the west side than there was on the east. The small pine box placed there by a local merchant (*not by the defendant*), was shown to have succumbed prior to this accident, and the porters testified they helped people on and off from the east side.

Carriers of passengers should anticipate that both old and young women, feeble and delicate people, as well as the strong and robust, will seek passage on their cars and provide suitable platforms or steps for that purpose. The jury might well have deemed it a most unreasonable delay in rebuilding the depot and that the failure to provide a suitable waiting room compelled plaintiff to remain in her own house as long as she could before exposing herself on a cold February day in an open field and thus accounted for her seeming haste, and that, even if the porter had been at the step in the first instance, it would have been a very poor substitute for a safe step.

The question, after all, was simply whether the failure of the defendant to have a suitable platform or other suitable and safe means for getting on the train was the cause of plaintiff's getting hurt in endeavoring to board the train; and, even if it was, whether plaintiff herself by her own fault or negligence did not contribute directly to this result. The facts were few and simple and the question of defendant's negligence and plaintiff's contributory negligence were properly submitted to the jury.

II. So also the jury were required to find that plaintiff was injured and the extent thereof. It may be

that the evidence was unsatisfactory as to the nature of the injury and that, to any but medical men, such a result seems very unusual, but we can not say there was not evidence to support the finding.

III.   As to the criticism of the court's instruction because it defined negligence to mean the lack of such care and caution as reasonable and prudent *men* would exercise under like circumstances, instead of "women," it is only necessary to say the defendant's own instruction cured this defect, if any; but the jury would have been utterly unfit to try any case if they did not understand that "men" in this instruction was generic and embraced women.

IV.   Nothing we have said militates in the slightest degree against those cases cited by counsel for defendant, to the effect that it is the duty of the railroad to keep its stations and approaches thereto in good condition and to provide safe and convenient means of entrance and departure, and that it is the duty of passengers to occupy the premises so provided for their use while waiting for trains and in going to and from the carrier's depot, offices, platforms and trains to use the ways and means provided for that purpose.

But those cases all proceed upon the assumption that a safe and suitable place has been provided by the carrier and are not applicable to a case where the carrier has wholly neglected to provide a suitable depot or platform, but leaves its patrons to stand in the open weather in midwinter without shelter or platform, as in the case at bar.   The judgment is affirmed.   SHERWOOD and BURGESS, JJ., concur.