BOARD OF SUPERVISORS OF BAY COUNTY v. EDMUNDS.

COUNTIES — REDUCTION OF TERRITORY — CONSTITUTIONAL PRO-
VISIONS.
　　Section 2 of article 10 of the Constitution prohibits the reduc-
　　tion of the territory of a county below 16 townships without
　　a vote of the people as well by attaching the territory to an
　　existing county as by using it to form an entirely new one.

Certiorari to Bay; Shepard, J. Submitted November
3, 1903. (Calendar No. 20,216.) Decided March 28,
1905.

Mandamus by the board of supervisors of Bay county
to compel Peter Edmunds, supervisor of the township of
Gibson, to appear with his assessment roll and act as a
member of said board. There was an order granting the
writ, and respondent brings certiorari. Affirmed.

*T. E. Webster* ( *James Van Kleeck* and *Chester L.
Collins*, of counsel ), for relator.

*John J. McCarthy* ( *E. A. Cooley, J. C. Hewitt*, and
*Ashley Pond*, of counsel ), for respondent.

HOOKER, J. In 1883 the legislature organized the
county of Arenac from territory theretofore included in
the county of Bay, leaving the latter county reduced to
16 townships. See *County of Bay* v. *Bullock*, 51 Mich.
544. At its last session the legislature passed an act pro-
viding that the township of Gibson be taken from Bay
county and attached to the county of Arenac. This act
was approved May 27, 1903 (Act No. 496, Local Acts
1903). On October 15, 1903, a petition was filed in the
circuit court for the county of Bay, asking a writ of man-
damus to compel the supervisor of Gibson township to
appear with his assessment roll and act as a supervisor,
with the board of supervisors of the county of Bay, in the

equalization of the rolls of said county.  Upon a hearing a peremptory writ was issued, and the respondent has brought the proceeding to this court.

Section 2 of article 10 of the Constitution provides :

" No organized county shall ever be reduced by the organization of new counties to less than sixteen townships as surveyed by the United States, unless in pursuance of law a majority of electors residing in each county to be affected thereby shall so decide.  The legislature may organize any city into a separate county, when it has attained a population of twenty thousand inhabitants, without reference to geographical extent, when a majority of the electors of a county in which such city may be situated, voting thereon, shall be in favor of a separate organization."

It is contended by the relator that this provision forbids such action as was taken in this instance, and that the act is void, for the reason that its effect is to reduce Bay county to 15 townships, without a vote of its electors authorizing it.  Upon the part of the respondent it is said that the act does not infringe the section cited, for the reason, that although said section forbids such a reduction by the organization of a new county, it does not prohibit any change that the legislature may see fit to make, where the change adds the territory taken to a county already established, and, as Arenac was organized in 1883, it was competent for the legislature to increase it 20 years later by taking territory from Bay county, although the effect be to reduce Bay county to less than 16 townships.

In our opinion, this construction does violence to the spirit of the Constitution.  At the time that the Constitution was made and adopted, the State was young, and several of the counties, especially of the Upper Peninsula, comprised large areas, and new counties have since been organized from such.  By reference to the earlier histories and maps, and the acts of the governor and judges to be found in the Territorial Laws, this will be seen, *e. g.*, in a map published in 1839, and found in Lanman's History of Michigan, " Civil and Topographical," Sanilac county comprised the territory south and east of Saginaw

Bay, lying north of Lapeer, as it then existed, and a county lying to the east of Lapeer called Desmond, while all north of Oceana (which then appears to have embraced Muskegon and Newaygo), Montcalm, Isabella, Gladwin, and Arenac was called the township and county of Michillimackinac. The entire Upper Peninsula was included in Chippewa county. The territory afterwards constituting Bay county was divided between Midland and Arenac counties. It was an early practice to include 16 townships in the establishment of a county, and the Territorial Laws contain many such instances where the governor and judges took such action. This practice was generally followed after the State was admitted to the Union, since which time many new counties have been organized from the large counties referred to. It is reasonable to suppose that, previous to the time when the Constitution of 1850 was formulated, changes in counties had consisted for the most part in reduction of the area of large counties, for the purpose of erecting new counties, rather than to add to counties already established, and it is probable that the language used was suggested by existing conditions and practices.

In ascertaining the intent of this constitutional provision, we may consider the object to be accomplished, and the consequences that will follow a given construction. It is conceded that, had Gibson township been included in Arenac by the act of 1883, the act would have been void; yet, if the act of 1903 is valid, the legislature can do by indirection a thing which it cannot do directly, and accomplish by two bills what it could not by one. It is suggested that the bona fides of the legislature may be made a test of the validity of such an act, but this cannot be so. The good faith of the legislature must be presumed, and it is unseemly for one branch of the government to exercise the power of trying the good faith of another, and nullifying its acts on such a ground, if it is not more than doubtful if any such power exists. We must therefore hold, either that the legislature can never

reduce any county below 16 townships without the consent of its inhabitants, or that it may make changes between existing counties at will; and that the territory of the State having now been fully divided into counties approximating 16 townships, so that changes are hereafter to be limited to additions and subtractions to and from existing counties, there is little . or no further chance for an application of the constitutional provision in question, and that under respondent's contention it has already become, or must soon become, practically obsolete.

If respondent's contention is right, the provision of the Constitution was never an impediment to the reduction of an existing county to less than 16 townships, so long as it was not done for the purpose of using it in the erection of an entirely new county, either by itself, or together with land taken from another county. To illustrate, while Lapeer county, which consisted of but 16 townships, could not be reduced by using it, with other territory to be taken from the adjoining large county of Sanilac, to erect a new and distinct county without a vote of its inhabitants, it would not have been an infringment of this provision for the legislature to attach any portion of Lapeer to the already existing county of Sanilac without such vote. The object that the constitutional convention must have had in view seems apparent. It was to protect existing counties, and such as should be thereafter created, from reduction below 16 townships without the consent of the inhabitants thereof. There is nothing to indicate an intention merely to place an obstacle in the way of creating altogether new counties, and leave the way open to the reduction of existing counties by giving their territory to other existing counties. The proceedings of the convention indicate a practically unanimous sentiment against the reduction of counties to less than 16 townships, and the provision in question in terms, says, "No county shall ever be reduced," etc.

Keeping in view the evident design to protect the inhabitants of counties from undesirable changes in county

lines, and the absence of any. reason for discriminating between instances where an altogether new county is to be erected from territory taken from an existing county, and instances where it is to benefit an existing county territorially at the expense of another, and the improbability of an intention to make a rule by which the legislature was to be at liberty to reduce Bay county below 16 townships by attaching some of its territory to Midland, a pre-existing county, but not to do a similar thing by attaching the same territory to Arenac, a county organized after the Constitution was adopted, we are justified in looking for a more reasonable construction than that contended for by the relator. Bearing in mind the rule upon which this contention mainly rests, i. e., that all of the language of the provision must be given effect, if possible, and the further principle that the Constitution is to receive a strict construction in its limitations upon legislative power, we must still find a reasonable construction, if possible. This is done, without violence, either to the rules stated, by finding that the term "new counties" should not be limited to such as had previously in no part formed a complete county by itself, but was intended to include all counties resulting from changes in pre-existing county lines. When a county is changed in its territory by the addition of territory, it becomes a " new county," although the name be unchanged, and although it be accomplished by a law which in terms attaches the territory to the old county. By this construction we find no difficulty in carrying out the manifest intent of the convention, and adhering to the opinion heretofore announced by this court, through Mr. Justice COOLEY [*County of Bay* v. *Bullock,* supra], that "the object [of this provision] was to prevent the unreasonable reduction of counties in size," and that the act is invalid.

The order is affirmed.

MOORE, C. J., and CARPENTER, GRANT, and MONTGOMERY, JJ., concurred.