PEOPLE *v.* BARLTZ.

1. APPEAL AND ERROR—CERTIORARI—CRIMINAL LAW—REVIEW.
    Review of a conviction of the crime of larceny should be had by writ of error rather than by certiorari.

2. SAME.
    Where a single question of law of considerable importance

On constitutionality of statute entitling women to serve as jurors, see note in L. R. A. 1918E, 773.

is presented, defendant is under sentence, and a writ of error could still issue as of course, the Supreme Court will treat the case as though before it on writ of error, although brought up on certiorari.

3. CONSTITUTIONAL LAW—CONSTRUCTION—INTENT.

The Constitution should be construed, if its language is appropriate, so that it will accomplish the purpose the people intended it to accomplish.

4. SAME—WOMEN QUALIFIED AS JURORS.

Article 3, § 1, of the Constitution, as amended, giving to women the right to vote, and placing them in the class of citizens and electors, from which class jurors were, under the statute (3 Comp. Laws 1915, § 12190), to be selected, entitles a woman elector to perform jury duty, if she is possessed of the same qualifications required of men for that duty; and the provisions of the Constitution (Art. 2, § 19, and Art. 5, § 27) referring to jurors as "men" are to be construed to mean "jurors."

5. SAME—OBITER DICTUM.

The language of this court in *McRae* v. *Railroad Co.*, 93 Mich. at page 405, referring to the constitutional right of trial by 12 "men," *held*, *obiter dictum*, the question involved in the instant case not being then before the court.

6. JURY—QUALIFICATIONS OF JURORS FOR LEGISLATIVE CONTROL.

The qualifications of jurors are matters of legislative control, even though the qualifications laid down by the legislature differ from those at common law.

7. WORDS AND PHRASES—"MEN"—DEFINITION.

In law the word "men" frequently has a broader and more comprehensive meaning than usually given in the dictionaries, much depending upon the context and object sought to be obtained (1 Comp. Laws 1915, § 64), sometimes being construed to mean "all human beings, or any human being, whether male or female."

Certiorari to recorder's court of Detroit; Jeffries (Edward J.), J. Submitted November 18, 1920. (Docket No. 119.) Decided December 21, 1920.

Harold Barltz was convicted of larceny. Affirmed.

*Birnkrant, Birnkrant & Birnkrant* (*Saul J. Birnkrant*, of counsel), for appellant.

*Alex. J. Groesbeck*, Attorney General, *Matthew H. Bishop*, Prosecuting Attorney, and *Collins B. Scott*, Assistant Prosecuting Attorney, for the people.

STONE, J. This case is here upon certiorari to review the trial and conviction of the defendant in the recorder's court of the city of Detroit upon a charge of larceny of property valued at $55. Notwithstanding our opinion that a writ of error would be the more appropriate proceeding, the trial having been according to the course of the common law, we have concluded (as a single question of law is presented, and that one of considerable importance, and as the defendant is under sentence, and a writ of error could still issue as of course) to treat the case as though here upon writ of error. The single question presented by this record is whether under our Constitution and statutes a woman can sit as a juror in a criminal case. In the instant case the jury was composed of 11 men and 1 woman, namely, Miss C. M. Gitzen. After exhausting his peremptory challenges, defendant challenged Miss Gitzen for cause, on the ground that she, being a woman, was prohibited by the Constitution of this State from sitting as a juror in the case. The challenge was overruled, exception duly taken, and error is assigned upon the ruling.

Counsel for defendant first call attention to section 19, article 2, of our present Constitution, which provides that:

"In every criminal prosecution the accused shall have the right to a speedy and public trial by an impartial jury, which may consist of less than 12 men in all courts not of record." * * *

It is said by counsel for defendant that we are not

called upon to decide whether the legislature *can* give women the right to serve on a jury, as the legislature has made no such provision. And that the question is whether making them electors, in and of itself, makes them eligible to jury duty. Attention is called to the language of this court in *McRae* v. *Railroad Co.*, 93 Mich. at page 405 (17 L. R. A. 750), where Justice LONG, speaking for the majority of this court, and referring to section 27 of article 6 of the Constitution of 1850, providing that "The right of trial by jury shall remain," said:

"This right was a trial by a jury of 12 good men and true."

And attention is also called to *Hill* v. *People,* 16 Mich. 351; and it is urged that the common law provided for a jury composed of men, and that our Constitution has preserved this qualification and specially states that the jury shall be composed of men. It is well here that we call attention to article 3, section 1, of the present Constitution, as amended at the November election of 1918:

"In all elections every inhabitant of this State, being a citizen of the United States  *  *  *  shall be an elector and entitled to vote.  *  *  *  And provided further, there shall be no denial of elective franchise at any election on account of sex."

Counsel refer to our general statute relating to jurors, being section 12190, 3 Comp. Laws 1915, and add that in this State only those persons being citizens having the qualifications of electors are eligible for jury service who are

"in possession of their natural faculties, and not infirm or decrepit, of good character, of approved integrity, of sound judgment, and well informed and conversant with the English language, and free from all legal exceptions."

It is said by counsel for appellant:

"Our question is not whether the legislature of the people *should* alter the personnel of our juries, but whether they *have* done so."

The only case cited in support of their claim is that of *In re Grilli*, 179 N. Y. Supp. 795. It will be observed that this decision is not that of a court of last resort. The supreme court of New York seems to have held that the right of jury service in that State was not incidental to, and a part of, suffrage, and was not conferred upon women by the amendment to the State constitution granting women the right to vote.

We do not understand that any question is raised here as to the right of Miss Gitzen to vote under article 3, section 1, of the Constitution as amended, nor that she was not in every way a qualified juror, unless it be by reason of her sex; and the only question presented is whether or not under the existing Constitution and laws of this State a woman is entitled to sit as a juror in a criminal case in a court of record, she being an elector in possession of her natural faculties, etc.

Counsel for the people call attention to section 27 of article 5 of our present Constitution, reading as follows:

"The legislature may authorize a trial by a jury of a less number than 12 men."

And the question is raised by counsel for appellees whether our Constitution, in view of all its provisions, has impliedly guaranteed trial by 12 men in courts of record—a question that we do not deem it necessary for us to decide. Conceding and not deciding that there was such implication before the amendment of section 1 of article 3 of the Constitution, we proceed to inquire what the effect of the adoption of this amendment was. In construing the Constitution it should be given the meaning that the people intended

it should have. It should be construed, if its language is appropriate, so that it will accomplish the purpose the people intended it to accomplish. Upon the general question of how provisions of the Constitution should be construed, the following authorities are pertinent: *Bay City* v. *State Treasurer,* 23 Mich. 499; *People* v. *Harding,* 53 Mich. 481; *Bay County Supervisors* v. *Edmunds,* 139 Mich. 466; *Attorney General* v. *State Board of Assessors,* 143 Mich. 73; *Attorney General* v. *Detroit Common Council,* 148 Mich. 71; *Kearney* v. *Board of State Auditors,* 189 Mich. 666.

What was the purpose and object of the people in adopting the constitutional amendment, striking out the word "male" from the Constitution? Was it not to do away with all distinction between men and women as to the right to vote, or as to being electors? We think there can be but one answer to this question, and that is that the purpose was to put women upon the same footing as men with reference to the elective franchise. What then was the result? Women became thereby electors. The moment a woman became an elector under the constitutional amendment she was entitled to perform jury duty, if she was possessed of the same qualifications that men possessed for that duty. In other words, she was placed in a class of citizens and electors, from which class jurors were, under the statute, to be selected. We need but refer to the statute, section 5 of Act No. 5 of the Public Acts of 1895, to determine the qualifications of jurors in Wayne county. The language as to their qualifications is substantially the same as in the general statute, which we have quoted. This court has repeatedly said that an elector was qualified as a juror, if he possessed the requisite intelligence and other qualifications. See *People* v. *Collins,* 166 Mich. 4, 9, citing *People* v. *Scott,* 56 Mich. 154; *People* v. *Rosevear,* 56 Mich. 158; *People* v. *Considine,* 105 Mich. 149.

It seems clear to us that by making a woman an elector she is thereby placed in a class which makes her eligible for jury duty. A case almost directly in point on this proposition is that of *Rosencrantz* v. *Washington*, 2 Wash. Ter. 267 (5 Pac. 305). We are aware that this case has since been overruled by a divided court in *Harland* v. *Washington*, 3 Wash. Ter. 131 (13 Pac. 453) ; but the language of the *Rosencrantz Case* is so appropriate and the reasoning so clear that we are disposed to adopt it. The court there said:

"The Code of 1881 provides that all electors and householders shall be competent grand jurors, and it is claimed by plaintiff in error that this must be held to apply to only such persons as were thus qualified at the time such provision was enacted and not to such as should thereafter become endowed with such requisite qualifications; but to us it seems clear that the legislature intended simply to prescribe what classes of persons in society, as it was then, or should be thereafter constituted, should be called upon to perform such jury duty, and that whenever a person by any change in his condition was brought within such requirements, he at once became liable to perform such duty, and that likewise where, by a change in the law, a class of persons was brought within such requirements, the members of such class at once became liable to society for all the obligations incident to the class of electors and householders, of which they had thus become members."

In our opinion the adoption of the amendment to section 1 of article 3 of the Constitution had the effect to modify the provisions of the Constitution which we have alluded to. That is to say, the provisions should all be construed together. If making women electors qualified them for jury duty, then men alone were not required to serve as jurors; and it might well be said that the language referring to the jury, "which may consist of less than 12 men in all courts not of record," is now the equivalent of saying that juries may con-

sist of less than 12 jurors in all courts not of record. In other words, the word "men" loses its significance and becomes that of "jurors."

The language of this court in the *McRae Case,* where the term "men" is used, was purely *obiter dictum* as far as the word "men" was concerned, the question here discussed was not before the court, and the language might as well have been "this right was a trial by a jury of 12 good jurors and true," substituting the word "jurors" for "men."

It seems to be the settled law in all the States, so far as we have been able upon examination to discover, that the qualifications of jurors are matters of legislative control, even though the qualifications laid down by the legislature differ from those at the common law. *People* v. *Harding, supra; City of Saginaw* v. *Campau,* 102 Mich. 594; *Ex parte Eban Mana,* 178 Cal. 213 (172 Pac. 986, L. R. A. 1918E, 771).

It was held in the last cited case that the constitutional provision, that the right of trial by jury shall be secured to all, and remain inviolate, did not prevent the legislature from authorizing women jurors where the constitution also provides that no person shall, on account of sex, be disqualified from pursuing any lawful business, vocation, or profession, and confers upon women the right to vote and hold office. In that case an act authorizing women to sit as jurors was claimed to be unconstitutional. In holding the law constitutional the court said, among other things:

"Petitioner claims that the word 'men' should be inserted, by proper construction, in the constitution, so that the constitution would in effect read: 'The right of trial by a jury of 12 men shall be secured to all,' etc. This contention is based upon the proposition that when the constitution provides for a trial by a jury it, by necessary inference, provides for the jury as known at the common law (*People* v. *Powell,* 87 Cal. 348 [25 Pac. 481, 11 L. R. A. 75]) and that, as

juries of men were provided by the common law, the constitution must be thus construed. Two questions seem to be thoroughly settled by the unbroken line of decisions in all the States: *First*, that constitutional provisions guaranteeing the right to a trial established the right to a trial by a jury as known at common law; *second*, that the qualifications of the jury is a matter subject to legislative control, and that, even though such qualifications may differ from those at common law, such legislation is nevertheless a valid exercise of legislative power. 24 Cyc. p. 187; *People* v. *Powell, supra; People* v. *Chin Mook Sow,* 51 Cal. 597."

So long as the essential requisites of trial by jury are preserved, it is competent for the legislature to prescribe the necessary qualifications of jurors, and additional qualifications may from time to time be imposed by the legislature.

Another aspect of the question is that in law the word "men" frequently has a broader and more comprehensive meaning than usually given in the dictionaries. Much depends upon the context and the object sought to be obtained. In some of its uses it is construed to mean "all human beings, or any human being, whether male or female." Anderson Law Dict.; *State* v. *Seiler,* 106 Wis. 346 (82 N. W. 167).

Section 64, 1 Comp. Laws 1915, provides as follows:

"In the construction of the statutes of this State, the following rules shall be observed, unless such construction would be inconsistent with the manifest intention of the legislature, that is to say  *  *  * every word imputing the masculine gender only, may extend and be applied to females as well as males."

We refer to the following authorities and definitions:

*Rackliffe* v. *Seal,* 36 Mo. 317, 319:

"To accommodate the evident intentions of the parties, words will be construed with an unusual extent of meaning, and held to be generic rather than

specific; as, for instance, 'men' will be interpreted to mean mankind, and include women."

In *Eichorn* v. *Railway Co.,* 130 Mo. 575 (32 S. W. 993), an action was brought against the railway company by a married woman to recover for personal injuries. At page 589 the court said:

"As to the criticism of the court's instruction because it defined negligence to mean the lack of such care and caution as reasonable and prudent men would exercise under like circumstances, instead of 'women,' it is only necessary to say the defendant's own instructions cured this defect, if any; but the jury would have been utterly unfit to try any case if they did not understand that 'men' in this instruction was generic and embraced women."

See, also, *Turner* v. *Whitten*, 40 Ala. 530, 532; *State* v. *Welsor*, 117 Mo. 570 (21 S. W. 443).

Webster's New International Dictionary:

"*Man* (Men pl.). A human being, an individual of the *genus Homo.*

"Man is the highest type of animal existing or known to have existed, but differs from other animals more in his extraordinary mental development than in anatomical structure.

"The human race; mankind; human beings collectively.

"'And God said, Let us make man in our image, after our likeness, and let *them* have dominion.' Gen. 1, 26.

"'The proper study of mankind is man.' Pope."

Century Dictionary:

"*Man.* A human being.

"2. A being, whether supra- or infra-natural; a person.

"3. An individual of the human race; a human being, as all men are mortal.

"'All these his wondrous works, but chiefly man, His chief delight and favour.' Milton.

"4. Generically the human race; mankind; human

beings; collectively: used without article or plural; as, man is born to trouble; the rights of man.

"5. Specifically. A male adult of the human race as distinguished from a woman, * * * or who is regarded as of manly estate.

"*Men.* A middle English variant of man in indefinite use."

So in any view of the case which we are able to take, under the authorities cited by counsel, or examined by us, we are of the opinion that the trial court did not err in overruling the challenge of the juror, Miss Gitzen, and that so far as this record shows she was a qualified juror under the Constitution and laws of this State.

The judgment of the court below is affirmed.

MOORE, C. J., and STEERE, BROOKE, FELLOWS, CLARK, BIRD, and SHARPE, JJ., concurred.