## PALMER *v.* STATE OF INDIANA.

[No. 24,794. Filed February 18, 1926. Rehearing denied May 12, 1926.]

1. JURY.—*Qualifications of jurors are matters of legislative control.*—The qualifications of jurors are matters of legislative control, from which it follows that such qualifications may differ from those of the common law. p. 627.

2. JURY.—*Adoption of constitutional amendment making women voters qualifies them for jury service.*—Where, by statute, jurors are to be selected from qualified electors, the adoption

of a constitutional amendment making women electors quali-
fies them for jury service. p. 629.

3. GRAND JURY.—*Since women became voters, they have been
eligible to serve as members of a grand jury if otherwise
qualified.*—When women became voters in this state, those who
were freeholders or householders became eligible to serve as
jurors, and therefore were eligible to serve as members of
the grand jury and as foreman thereof. p. 632.

4. INDICTMENT.—*Indictment for receiving stolen goods held
proper although accused might have been prosecuted under the
Vehicle Taking Act (§§2460, 2461 Burns 1926).*—An indict-
ment for receiving stolen goods under §2465 Burns 1926, §2273
Burns 1914, is proper notwithstanding that the accused might
have been prosecuted under the Vehicle Taking Act of 1921
(Acts 1921 p. 494, §§2460, 2461 Burns 1926) ; the state hav-
ing the right to elect under which statute to proceed. p. 633.

5. CRIMINAL LAW.—*Not necessary to allege or prove that owner
of stolen property was a corporation when its name implies
such fact.*—In a prosecution for receiving stolen property, it
is not necessary to allege or prove that the owner of the stolen
property was a corporation where its name implies that it was
such. p. 634.

6. CRIMINAL LAW.—*In prosecution for receiving stolen goods,
the thieves who stole the property are competent witnesses
against the defendant.*—In a prosecution for receiving stolen
goods, the thieves who stole the property are competent wit-
nesses against the defendant. p. 634.

From Vigo Circuit Court; *John P. Jeffries,* Judge.

Harry Palmer was convicted of receiving stolen
goods, and he appeals. *Affirmed.*

*Adamson & Gallagher* and *Russell Blair,* for appel-
lant.

*Arthur L. Gilliom,* Attorney-General and *Edward J.
Lennon, Jr.,* Deputy Attorney-General, for the State.

GEMMILL, J.—In this case, the appellant was charged
by indictment in the Vigo Circuit Court with receiving
stolen goods, to wit: one automobile, on November 30,
1923. The indictment was predicated on §2465 Burns
1926, §2273 Burns 1914. Appellant filed a verified plea
in abatement to the indictment, to which the state de-

murred on the ground that same did not state facts sufficient to abate the action. The demurrer was sustained. The appellant filed a motion to quash the indictment. Same was overruled. The appellant then entered a plea of not guilty. The trial was by the court, a jury having been waived. The court found the defendant guilty as charged in the indictment and pronounced judgment in accordance with the provisions of said section, under which the indictment was drawn. A motion for a new trial was filed and overruled. The appellant excepted to all of said rulings. On appeal, the rulings on the demurrer to the plea in abatement, on the motion to quash the indictment and on the motion for a new trial, are assigned as errors.

In the plea in abatement, it was alleged that the grand jury which returned the indictment at the February term, 1924, was illegal and that the said indictment was void, for the reason that one of the persons composing the grand jury was a woman. It was stated that she acted as foreman thereof, that she participated in the investigation, voted on the return of the indictment, and that, as foreman, she indorsed on the back of the indictment "A True Bill" and signed same.

It is not necessary for us to review the history of the qualifications of jurors, in general or in this state. Suffice to say that at common law, women were 1. not qualified to serve as jurors, with only one exception. And it is now settled, beyond any controversy, that qualifications of jurors are matters of legislative control, even though the qualifications laid down by the legislature differ from those of the common law.

In the bill of rights of the Indiana Constitution (§65 Burns 1926), it is provided: "In all criminal prosecutions, the accused shall have the right to a public trial

by an impartial jury in the county in which the offense shall have been committed."

From April 15, 1881, to May 31, 1917, our law on qualifications of jurors was as follows: "To be qualified as a juror, a person must be a resident voter of the county and a freeholder or householder." §1674 Burns 1914. In 1917, the general assembly amended said law to read thus: "To be qualified as a juror, either grand or petit, a person must be a resident voter of the county, and a freeholder or householder. Any person shall be excused from acting as a juror who is over sixty years of age and desires to be excused for such reason." Acts 1917, ch. 176, §1833 Burns 1926. This law was in force on March 20, 1924, the day appellant was indicted.

The Nineteenth Amendment to the Constitution of the United States in regard to woman suffrage became effective on August 26, 1920. Same is as follows: "(1) The right of citizens of the United States to vote shall not be denied or abridged by the United States or by any state on account of sex. (2) Congress shall have power by appropriate legislation to enforce the provisions of this article." And §2 of Art. 2 of the State Constitution, in regard to the qualification of electors, which provided that only males should be voters, was amended at the special election held on September 6, 1921, to read: "In all elections not otherwise provided for by this constitution, every citizen of the United States of the age of twenty-one years and upwards, who shall have resided in the state during the six months, and in the township sixty days, and in the ward or precinct thirty days, immediately preceding such election, shall be entitled to vote in the township or precinct where he or she may reside." §91 Burns 1926.

Where, by statute, jurors are to be selected from qual-

ified electors, the adoption of a constitutional amendment making women electors qualifies them for jury duty. *Parus* v. *District Court* (1918), 42 Nev. 229, 174 Pac. 706, 4 A. L. R. 140; *People* v. *Barltz* (1920), 212 Mich. 580, 180 N. W. 423, 12 A. L. R. 520; *State* v. *Walker* (1921), 192 Iowa 823, 185 N. W. 619; *Commonwealth* v. *Maxwell* (1921), 271 Pa. 378, 114 Atl. 825, 16 A. L. R. 1134. In these states, the statutory qualifications for jurors are similar to those of Indiana. In Nevada, "Every qualified elector * * * is a qualified juror"; in Michigan, "Jurors shall be selected from citizens having the qualifications of electors"; in Pennsylvania, "Juries shall be selected from the whole qualified electors of the county"; and in Iowa, "All qualified electors of the state * * * are competent jurors in their respective counties."

In *People* v. *Barltz, supra,* the court said:· "What was the purpose and object of the people in adopting the constitutional amendment striking out the word 'male' from the constitution? Was it not to do away with all distinction between men and women as to the right to vote, or as to being electors? We think there can be but one answer to this question, and that is that the purpose was to put women upon the same footing as men with reference to the elective franchise. What then was the result? Women became thereby electors. The moment a woman became an elector under the constitutional amendment she was entitled to perform jury duty,· if she was possessed of the same qualifications that men possessed for that duty. In other words, she was placed in a class of citizens and electors, from which class jurors were, under the statute, to be selected." And in *Commonwealth* v. *Maxwell, supra,* it was said by the court: "We have then the Act of 1867, constitutionally providing that the jury commissioners are required to select 'from the *whole qualified electors* of

the respective county * * . * persons to serve as jurors in the several courts of such county,' and the 19th Amendment to the federal Constitution, putting women in the body of electors. * * * If the act of 1867 is prospective in operation, and takes in new classes of electors as they come to the voting privilege from time to time, then necessarily women being electors are eligible to jury service. That the Act of 1867 does cover those who at any time shall come within the designation of electors there can be no question."

In *Neal* v. *Delaware* (1880), 103 U. S. 370, 26 L. Ed. 567, it was held that the adoption of the Fifteenth Amendment to the federal Constitution rendered inoperative a provision in the then existing constitution of a state, whereby the right of suffrage was limited to the white race; and therefore, a statute confining the selection of jurors to persons possessing the qualifications of electors was enlarged in its operation so as to embrace all those who, by the constitution of the state, as modified by that amendment, were entitled to vote. And in 25 R. C. L. 778, it is said: "It is a rule of statutory construction that legislative enactments in general and comprehensive terms, prospective in operation, apply alike to all persons, subjects and business within their general purview and scope coming into existence subsequent to their passage."

In some other states, the highest courts have arrived at a different conclusion from that stated as to the effect of the Nineteenth Amendment. In *In re Opinion of Justices* (1921), 237 Mass. 591, 130 N. E. 685, which was an opinion of the Justices of the Supreme Judicial Court of Massachusetts to the House of Representatives, it was held that the federal Constitution with the Nineteenth Amendment and the Constitution and laws of that state did not make women eligible to serve as jurors, that legislation was necessary to make them com-

petent to so act, and that the trial by jury preserved by the state Constitution was the common-law trial by jury in its indispensable characteristics as established and known at the time the Constitution was adopted. In *State v. James* (1921), 96 N. J. Law 132, 114 Atl. 553, 16 A. L. R. 1141, it was decided that the statute of New Jersey in force at the time of the indictment and trial of the defendant, while not providing in terms that men should be summoned as jurors, contained a distinct recognition of the common-law qualification that men only should be impaneled, by the use of the personal pronouns of the masculine gender "he" and "his," in describing the persons who should be selected as jurors, and that the Nineteenth Amendment to the Constitution of the United States emancipated women so far only as the right of suffrage was concerned, and did not operate in terms or by implication to qualify them as jurors. In the opinion, it was noted that, since the trial, a statute had been enacted which included, within the description of persons liable to jury duty, women as well as men. In the recent case of *People, ex rel., v. Barnett* (1925), 319 Ill. 403, 150 N. E. 290, it was held that the relatrix could not compel the jury commissioners of Cook county to replace her name upon the jury lists of that county; that it was evident that when the legislature enacted the law which provided for the appointment of jury commissioners in counties having more than 250,000 inhabitants and imposing upon them the duty of making a jury list, using the words "shall prepare a list of all electors between the ages of twenty-one and sixty years, possessing the necessary legal qualifications for jury duty to be known as the jury list," it was intended to use the words "electors" and "elector" as the same were then defined by the Constitution and laws of the State of Illinois; and, at that time, the legislature did not intend that the name of

any woman should be placed on the jury list, and must be held to have intended that the list should be composed of the names of male persons only.

In this state, as heretofore set out, the general assembly of 1917 amended the law as to the qualification of jurors, both grand and petit. At the same 3. session and at a prior date, a bill was passed by both the senate and house and signed by the Governor granting women the right to vote for presidential electors and certain other officers, and to vote in certain elections. Although this latter law was later held by this court to be unconstitutional, we can presume that when the present law as to qualifications of jurors was enacted, the members of the legislature believed that after the laws of that session went into effect, both men and women would be voters, the latter having partial suffrage. Although this belief was incorrect, reference is made to it to indicate that the members of the legislature when they last fixed the qualifications of grand and petit jurors did not have in mind that only men could serve as jurors. By the Nineteenth Amendment to the federal Constitution, a new class of voters was established in this state. By the said amended section of the state Constitution, the qualifications of electors were fixed and women were given the same voting rights as men. When women became electors in this state, those who were freeholders or householders became eligible to serve as jurors in the county where they were resident voters. The woman on the grand jury of Vigo county, which indicted the appellant, was not disqualified for jury service because of her sex, and no other objection was raised. As she could act as a grand juror, there is no reason why she was not competent to be the foreman of that body. There was no error in sustaining the demurrer to the plea in abatement.

The indictment in this cause for receiving stolen goods was drawn under the provisions of §381 of the Criminal Code of 1905, same being §2273 Burns 1914. (§2465 Burns 1926.) Appellant claims that since the passage of the act contained in ch. 189 of the Acts of 1921, (§§2460, 2461 Burns 1926, §§2301c, 2301d Burns' Supp. 1921), defining the crime of vehicle taking, the crime of receiving stolen goods is not committed when the goods alleged to have been unlawfully received consist of an automobile or any accessory or appurtenance contained thereon. In §2 of the vehicle taking act, the following is stated: "No person who shall have been found guilty of a violation of any of the provisions of this act shall be convicted of a lesser offense than the crime of vehicle taking as herein defined; nor shall any such person when so convicted, be imprisoned for a shorter period of time than the minimum period of imprisonment for a first, second or other subsequent conviction, as the case may be, as hereinbefore prescribed in this act." The indictment is predicated on that part of §2465 Burns 1926, §2273 Burns 1914, in regard to receiving goods which had been stolen. The vehicle taking act provides: That whoever unlawfully, without the consent of the owner takes, hauls, carries or drives away any vehicle, automobile or accessory or appurtenance thereof shall be guilty of the crime of vehicle taking. This latter act does not use the word "steals" or the word "stolen." The facts alleged in the indictment are covered by the section under which it was drawn. It contains all the necessary averments required by said section in regard to receiving stolen goods, and the offense is charged with sufficient certainty. It is probable that the appellant could have been prosecuted under the vehicle taking act; but as the facts warranted an indictment for receiving stolen goods, the state had the

right to elect under which statute it would proceed. The motion to quash the indictment was properly overruled.

In the motion for a new trial, two causes were assigned: That the finding of the court was not sustained by sufficient evidence and the finding was contrary to law. In the indictment, it was stated that the stolen property was the property of the Vandalia Coal Company, a corporation. Appellant insists that it was not shown that said company was a corporation, and that therefore the evidence was not sufficient. In *Johnson* v. *State* (1879), 65 Ind. 204, in which the defendant was indicted for arson, being charged with the burning of property insured against loss by fire by an insurance company, it was said: "We think it fairly deducible from the authorities, that, when an ideality is referred to in a pleading by a name such as is usual in creating corporations, and which discloses no individuals, a corporate existence is implied without being specially averred." In *Norton* v. *State* (1881), 74 Ind. 337, after setting out the above quotation from Johnson v. State, the court said: "This we regard as the correct doctrine. No innocent man can ever be put in peril by it, and many guilty ones may, by its operation, be prevented from escaping merited punishment." In that case, the court also said: "It is indeed doubtful, whether it was incumbent upon the State to do more than prove that there was an artificial being assuming and acting under a name indicating and implying a corporation." According to said cases of this jurisdiction, it was not necessary to allege that the owner of the stolen property was a corporation, its name implying that it was such. The evidence was conclusive that the Vandalia Coal Company was the owner of the stolen automobile, which it was alleged was received by the appellant. The proof of ownership

of the stolen property was sufficient. The thieves who stole the automobile were competent witnesses against the defendant. *Miller* v. *State* (1905), 165 Ind. 566, 76 N. E. 245. There was legal evidence, which the court must have believed, to justify and support the finding that the defendant was guilty as charged. We will not weigh the evidence. It was not error to overrule the motion for a new trial.

Judgment affirmed.