Argued October 20, affirmed December 19, 1922, rehearing denied
January 16, 1923.

# STATE *v.* CHASE.

(211 Pac. 920.)

**Jury—Acceptance of Six Men Jurors in Case Involving Minor Held
to Disqualify Other Men on Panel.**

1.　Under Section 1520, Or. L., as amended by Laws of 1921, page
515, Section 10, making women qualified for jury service and provid-
ing that in all cases involving a minor, either as a defendant or as
a complaining witness, "at least one half of the jury shall be women,"
the acceptance of six men on a jury involving a minor disqualified the
remaining men on the panel and warranted the court in accepting only
women for the remaining jurors without a challenge by the state
every time a man's name was called, since neither the state nor the
defendant could waive disqualification of men after six had been
accepted as jurors; the disqualification existing in favor of the
infant.

**Jury—Manner of Obtaining Six Women Jurors in Case Involving
Minor Held Proper.**

2.　Under Section 1520, Or. L., as amended by Laws of 1921, page
515, Section 10, providing that at least one half of the jury shall
be women in cases involving a minor, it was proper for the court,
under Section 983, in a case involving a minor, after six men had
been drawn on the jury, to reject the names of all male jurors and on
exhausting the panel without securing the required women jurors
to direct the sheriff to draw from the regular jury list the names
of women jurors, even if, in so doing, the court did not substan-
tially comply with Section 116 prescribing the manner in which the
jury shall be drawn.

**Jury—Statute Making It Optional With Women Whether or not to
Serve on Jury Held not Violative of a Defendant's Constitutional
Right to a Fair and Impartial Jury.**

3.　Section 1520, Or. L., as amended by Laws of 1921, page 515,
Section 10, making women qualified to sit on juries, but making it
optional with women whether to serve or not, *held* not violative of
a defendant's constitutional right to a fair and impartial jury.

**Jury—Statute Making Women Qualified to Sit on Juries Held not
Violative of a Defendant's Constitutional Right to a "Trial by
Jury."**

4.　Section 1520, Or. L., as amended by Laws of 1921, page 515,
Section 10, making women qualified to act as jurors, *held* not viola-
tive of a defendant's constitutional right to a "trial by jury," since
a defendant's only right is to a trial by an impartial jury of his
peers and since women are peers of men politically, in view of Bill
of Rights, Sections 1, 2, 10.

4.　Constitutionality of statute entitling women to be jurors, see
note in **L. R. A.** 1918E, 773.

Jury—Competency and Method of Selection of Jurors Left by Constitution to Legislature.

5. A constitutional provision entitling a defendant to a "trial by jury" merely guarantees a trial by an impartial jury of his peers, leaving details as to competency and method of selection to the legislature.

Jury—Statute Making It Optional With Women to Act as Jurors Held not Void as Discriminatory Against Men.

6. Section 1520, Or. L., as amended by Laws of 1921, page 515, Section 10, making women qualified to act as jurors and making it optional with them whether to act or not, *held* not void as against contention that it discriminated against men as a class.

Witnesses—Allowing Leading Questions to Nine Year Old Prosecutrix in Rape Case Held Proper.

7. In prosecution for rape on nine year old child, action of court in allowing leading questions to be propounded to the child *held* proper.

Rape—Slight Penetration Sufficient on Nine Year Old Child.

8. The very slightest penetration is sufficient to constitute rape on nine year old child.

Criminal Law—Failure to Request Instruction and Except to Court's Failure to Give Instruction Held to Preclude Defendant from Complaining of Such Failure on Appeal.

9. In prosecution for rape, the defendant, having failed to request an instruction that defendant could be found guilty of an assault with intent to commit rape and having failed to except to failure of the court to give such instruction, could not complain thereof on appeal.

Criminal Law — Weight of Testimony for Jury and not Supreme Court.

10. The weight of the testimony was a matter for the jury and will not be considered by the Supreme Court on appeal.

Criminal Law—Motives and Credibility of Witnesses not Considered by Supreme Court.

11. The motives and credibility of witnesses is a matter for the jury and will not be considered by the Supreme Court.

From Lane: G. F. SKIPWORTH, Judge.

In Banc.

The defendant was indicted for the crime of rape alleged to have been committed by having unlawful sexual intercourse with one Lydia Craig, a female child of the age of nine years.

On the trial a number of exceptions were taken, the assignments of error in the brief being as follows:

Assignment I questions the validity of Section 10 of Chapter 273, Laws of 1921, purporting to amend Section 1520, Or. L., and reading as follows:

"In criminal actions, the trial jury shall consist of twelve persons, unless the parties consent to a less number, and in all cases in which a minor under the age of eighteen years is involved, either as defendant or as complaining witness, at least one half the jury shall be women, and the trial jury is formed in the manner prescribed in chapter II of title II of the Code of Civil Procedure except as otherwise expressly provided in this chapter."

Assignment II suggests as error the ruling of the court permitting the prosecuting attorney to propound leading questions to the witness Lydia Craig. Assignment III raises the question as to the sufficiency of the evidence regarding penetration. The fourth assignment relates to the failure of the court to give certain statutory instructions.

The defendant was convicted, and appeals.

AFFIRMED.   REHEARING DENIED.

For appellant there was a brief over the name of *Messrs. Potter, Foster & Immel,* with oral arguments by *Mr. E. O. Potter* and *Mr. O. H. Foster.*

For respondent there was a brief over the names of *Mr. C. N. Johnston,* District Attorney, and *Mr. Gordon Wells,* with an oral argument by *Mr. Johnston.*

McBRIDE, J.—In 1921 it was deemed expedient so to amend the laws providing for the selection of jurors that women otherwise qualified should be eligible to jury duty. The principal change made by Chapter 273, Laws of 1921, consisted in striking out those words or phrases which limited the persons

eligible to jury duty to men, inserting in place of the word "men" or "male persons" the word "persons," and providing the terms upon which women summoned as jurors could obtain exemption. In addition to these amendments, no material change was made with the exception of that contained in Section 10, quoted in the statement.

Before proceeding further with the decision, it is proper here to state exactly what was done in this case. The drawing of the jury proceeded regularly until six men and five women had been drawn one by one, when the clerk drew from the jury-box the name of W. L. Wheeler, a male juror. Whereupon the state objected to the drawing of any more men on account of the provisions of Section 10 of Chapter 273, *supra*. The objection was overruled temporarily and Wheeler was examined and took his place in the jury-box. Another woman juror was drawn but was excused for cause and thereupon and before any more men jurors were called, the court reconsidered its ruling in respect to Wheeler and excused him from service, to which ruling defendant excepted. Thereupon the clerk drew one by one from the box the names of several male jurors and by order of the court laid the same aside and continued to draw names from the box until the name of a woman juror was drawn, to all of which defendant excepted. The clerk announced that the names of all women jurors were exhausted, whereupon the court directed the sheriff in the presence of the court and counsel to draw from the regular jury list the names of ten women jurors to appear on March 13, 1922, at 9 o'clock A. M., to which procedure defendant objected on the ground that there yet remained in the box the names of male jurors.

When the court convened on March 13th it announced in answer to a question by defendant's counsel that it would adhere to its ruling rejecting the names of male jurors, saying, "In any event this jury will be composed of at least six women. If counsel exercises all six challenges the court will draw from the regular jury list until at least six women are drawn on the jury." Counsel for defendant then stated that in view of this ruling the defense would waive any further challenges. The jury as selected was composed of six men and six women.

1. We fail to see anything improper or irregular in the ruling of the court. Section 10 of Chapter 273, Laws of 1921, is imperative that "in all cases in which a minor under the age of eighteen years is involved, either as defendant or as complaining witness, at least one half of the jury *shall* be women." The result in this particular instance was that when the quota of six men had been taken and accepted, the remaining men on the panel were disqualified by the terms of the statute from serving on that particular jury. It was not an exemption, but a disqualification, one such as neither the state nor the defendant could waive, because it existed in favor of the infant witness.

2. In the case at bar it appears that the provisions of Section 116, Or. L., were substantially complied with. The state had challenged all male jurors on the ground of disqualification under the particular circumstances, and there was no necessity of repeating the challenge over again every time another name was called. In effect the statute challenged them, and unless the section in question is in violation of our Constitution, we can see no objection to the method pursued. The Constitution guarantees to a

defendant the right of trial by an impartial jury, leaving the legislature to provide the method of securing such a jury. So long as it is a jury of his peers, that is, of qualified citizens impartial between the state and himself, the defendant has no right to complain because a particular class of persons is included or excluded. The law exempts from jury duty several classes of people: ministers, school-teachers, attorneys, civil officers, firemen, and many others, and excuses from such service jurors who have served for a period of four weeks or who for family reasons are unable to attend. Many of those in the exempt class would make ideal jurors, but reasons of public policy and convenience justify their exemption. The reason for requiring cases of the character of the present to be tried before a jury composed partly of women rests upon the highest considerations of public policy and humanity. Anyone who has occupied the circuit bench and seen a poor, frightened girl, a stranger to a courtroom, forced to detail the facts in regard to her injury or shame to a jury composed of strange men, has felt that the presence of a few of the mothers of children in the jury-box would be more in accordance with humanity and justice. The intention of the legislature in enacting Section 10, *supra,* is plain, and even if to give it effect one should hold that it works an implied amendment of Section 116, we should so hold rather than declare the law void for uncertainty. And although, as before stated, we are of the opinion that Section 116 was substantially complied with, yet, even conceding that such was not the case and that the legislature required a jury in this kind of case to be composed of an equal number of men and women, but without prescribing the method by which equality should be

attained, Section 983, Or. L., provides an ample remedy for such omission. It reads as follows:

"When jurisdiction is, by the organic law of this state, or by this Code or any other statute, conferred on a court or judicial officer, all the means to carry it into effect are also given; and in the exercise of the jurisdiction, if the course of proceeding be not specifically pointed out by this Code, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this Code."

See also *Aiken* v. *Aiken,* 12 Or. 207 (6 Pac. 682); *Williams* v. *Pacific Surety Co.,* 66 Or. 155 (127 Pac. 145, 131 Pac. 1021, 132 Pac. 959, 133 Pac. 1186).

3. The claim that the statute is in violation of the Constitution is not predicated upon the argument that it is unconstitutional to permit women to sit upon juries, a practice not now unusual in several of the states, but it is claimed that by allowing women summoned to serve upon the panel to decline such service, making it thereby optional with the person served to attend or not, the enactment of 1921 destroys the compulsory nature of jury duty and in some way not clearly explained by counsel deprives a party of a fair and impartial jury. While in the opinion of the writer it would have been better policy if the statute had specified the grounds upon which a woman could be excused from jury duty, such as necessity of caring for her family or the like, we think there is no invasion of the constitutional rights of a defendant in permitting the service upon a jury by women to be largely voluntary. The right of a defendant is to have a fair and impartial jury, and if the statute gives him this, he has no reason to complain if it permits women to excuse themselves from service. From their physical constitution as well as from the nature of their duties and occupations,

women have many reasons for not wishing to serve or being required to serve upon juries, which do not apply to male jurors, and some of these are such as a delicate woman would hesitate to specify in court or even to a judge.

4. The not infrequent remark that by using the words "trial by jury" is meant a common-law jury, is inaccurate, to say the least. It is safe to say that in a majority of the states one or more of the qualifications of a common-law juror are ignored by the statutes. The Constitution of Massachusetts is substantially the same as our own in regard to trial by jury, and the remark of the court in *Commonwealth* v. *Dorsey*, 103 Mass. 412, 418, may be properly applied to the instant case:

"The particular provision of the constitution applicable to the case is the last clause of art. 12 of the Declaration of Rights, 'And the legislature shall not make any law that shall subject any person to a capital or infamous punishment, excepting for the government of the army and navy, without trial by jury.' The jury referred to in this provision is what has been known as a petit jury, which consisted, by the common law, of 'twelve good and impartial men of the neighborhood.' Bac. Ab. Juries. Undoubtedly the constitution contemplated a jury of twelve men, who should be good and impartial. The neighborhood, in this Commonwealth, has always included the county. But it is not contemplated that they shall know the parties and the case beforehand, so as to try cases on their personal knowledge, as they formerly did. *Schmidt* v. *New York Union Insurance Co.*, 1 Gray (Mass.), 529, 535. On the contrary, they are to try causes on evidence produced before them, and should know so little of the case as not to have formed or expressed any opinion in regard to its merits, and should be free from bias or prejudice. But the method of selecting jurors is left by the constitution to be regulated by legislative enact-

ments; and these may be modified from time to time as the legislature shall think proper.''

The common-sense view of the whole matter is that the intention of the framers of the Constitution was to insure to a defendant the right guaranteed by Magna Charta, namely, a trial by an impartial jury of his peers, leaving details, as to competency and method of selection to the legislature. Women are now the peers of men politically and there is no reason to question their eligibility upon constitutional grounds.

5. The fact that a common-law jury was defined to be a ''jury of twelve *men*.'' etc., had its origin in the circumstance of the political servitude of women in the early days of juridical history so that they were not the ''peers'' of a man accused of crime. In the broad sense of the word they are now ''freemen'' and neither the Constitution nor the laws when they use the term ''men,'' except in rare instances, use it with reference to sex. Thus in Section 1 of the Bill of Rights, which declares that all ''men'' are equal in right, in Section 2 which provides that all ''men'' shall be ''secured in their natural right to worship Almighty God,'' etc., and in Section 10, which declares that ''every man shall have remedy by due course of law for injury done him in his person, property or reputation,'' nobody would contend that women are not included.

6. Neither is Section 10 of Chapter 273, *supra,* as applied by the court in this case discriminatory against men as a class. If it had so happened, as it might, that a majority of the panel had been women and when six women had been drawn and accepted the court had refused to allow more women to sit, it could not be said that the law discriminated against

women. It is plain that under like conditions the law operates equally as to both sexes. We hold the section questioned constitutional and approve the court's construction of it. The various cases cited by counsel arising upon alleged violation of the fourteenth amendment to the Constitution of the United States have no application here. In those cases it was claimed that the legislatures of certain states had discriminated against persons of African descent by excluding them as a class from serving on juries, which the court held was a discrimination forbidden by the fourteenth amendment. But for that amendment the courts would no doubt have held such statutes valid. Having arrived at the conclusion that there was no error committed in the selection of the jury, we shall now consider the other objections to rulings of the court.

7. Assignment II predicates error on the ruling of the court in allowing the prosecuting attorney to propound leading questions to the witness Lydia Craig. It is plain from a perusal of the transcript that the witness was a child nine years old, exceedingly immature, deplorably ignorant and frightened almost out of her senses by her surroundings. Under such circumstances the court very properly allowed leading questions to be propounded: *State* v. *Ogden,* 39 Or. 195 (65 Pac. 449); *State* v. *Megorden,* 49 Or. 259 (88 Pac. 306, 14 Ann. Cas. 130).

8. It is next urged that the court erred in not directing a verdict for want of proof of penetration. We do not care to soil the pages of the Reports by the disgusting detail of the evidence. Suffice it to say that the evidence of the little girl, supplemented by that of her father and mother, who examined her person and clothing, and the statements of physicians

as to the inflamed condition of her private parts were
sufficient to warrant the jury in finding that there
had been at least slight penetration; and the slightest
is sufficient.

9. Error is predicated upon the failure of the court
to instruct the jury that it might find the defendant
guilty of an assault with intent to commit rape. No
request was made for an instruction to this effect and
no exception was taken to the failure of the court
to give it. Conceding for the purposes of the argu-
ment that such an instruction in a case of statutory
rape would have been proper, the failure of the de-
fendant to request it and save his rights by a timely
exception precludes him from taking advantage of
the omission of the court to give it. It is not error
simply, but error legally excepted to, which consti-
tutes ground for reversal: *Kearney* v. *Snodgrass*, 12
Or. 311 (7 Pac. 309); *Nally* v. *Richmond*, 105 Or.
462 (209 Pac. 871).

The same may be said of the next assignment, which
is that the court failed to instruct the jury that "if
weaker and less satisfactory evidence is offered where
it appears that stronger and more satisfactory evi-
dence was within the power of the party, the offered
evidence should be viewed with distrust." It is dif-
ficult upon reading the testimony to discern where
stronger or more satisfactory evidence was within
the power of the state than that actually produced,
but, as before remarked, there was no request by
the defendant for this instruction.

A *dictum* by Justice MOORE in *Stamm* v. *Wood*, 86
Or. 174 (186 Pac. 69), seems to have misled counsel
into the conclusion that a failure of the court *sua
sponte* to give this instruction would constitute re-
versible error. But in that case the instruction was

actually given and there was therefore no exception or complaint either in the brief or argument of appellant on that score. Nor was the reversal placed on that ground, although a reading of the opinion without the assistance of the transcript or abstract might mislead the casual reader.

10, 11. There is in the brief of defendant's counsel an able and plausible argument as to the weight of the testimony and the motives and credibility of the state's witnesses, but these matters were for the jury and we are precluded from considering them.

From aught that appears here the defendant had a fair trial and an able defense, and, being convicted, must abide the consequences. The judgment is affirmed.          AFFIRMED.   REHEARING DENIED.