**UNITED STATES v. ROEMIG.**

No. 2085.

District Court, N. D. Iowa,
Cedar Rapids Division.

Nov. 23, 1943.

Tobias E. Diamond, U. S. Atty., of Sheldon, Iowa, and William B. Danforth and Franklin Gill, Asst. U. S. Attys., both of Sioux City, Iowa, for plaintiff.

Robert S. Milner, of Cedar Rapids, Iowa, and Carl H. Lambach, of Davenport, Iowa, for defendant.

DELEHANT, District Judge.

The defendant, as his initial action, and before plea, in this case, has filed a motion to quash the indictment found and returned against him for the alleged criminal destruction by fire of war materials and war premises, upon the asserted ground that the grand jury returning the indictment was not legally constituted. The specification of invalidity is the alleged systematic, intentional and deliberate exclusion of women from the membership of the grand jury. It is made satisfactorily to appear that the defendant was not, prior to, or at the time of, the selection, or the time of convening, of the grand jury, informed of its selection or impending session, and that he had no opportunity to challenge the regularity of its selection, at any point in his prosecution prior to his filing of the instant motion to quash. Therefore, the motion is timely and must be considered upon its merits, unaffected by any issue of waiver, either intentional or inadvertent.

Regret may be expressed that in the present posture of the judicial office in the district, an issue of this character, involving implicitly a question of administrative practice within the district, should be submitted for determination by a judge assigned for temporary service within the area, after the announced retirement of the recently incumbent judge and before the appointment of his successor. Such a problem might more appropriately be solved by the judge upon whom will shortly rest, for a substantial period of time, the burden of the practical administration of justice in the Northern District of Iowa. Yet that consideration cannot be allowed to intercept or postpone the ruling upon the question which has been presented.

The motion has been submitted upon oral testimony stenographically recorded.

Without unnecessary particularity or detail, the court finds that in the preparation of the list of names from which the members of the grand jury were thereafter selected by lot, the names of women were arbitrarily purposefully, intentionally, systematically and entirely excluded, with the consequence that women were effectively prevented from serving on the grand jury; that this course not only was pursued in the selection of the grand jury under immediate scrutiny, but has been the unvaried practice in the district for more than thirty years and presumably since its erection, that the limitation to male persons of the function of jury service, admittedly mandatory within this jurisdiction prior to the effective date of the Nineteenth Amendment to the Constitution of the United States, has been persisted in since that date, apparently without previous challenge and at the informal direction, though without formal order, of the several presiding judges, although women have served for many years on juries in the state courts of Iowa and now are and for some time have been serving on juries in the United States District Court for the Southern District of Iowa; and that women presently constitute at least one-half of the adult population of the area from which the jury was secured.

What will presently be said must not be understood as a criticism of the practice hitherto pursued by any official of the court. The United States Attorney has had no part in the selection of juries for the district. The clerk, his deputies, and the several jury commissioners have proceeded along an unchanged and uncriticised course, as the court has presumably desired. And for all that has appeared in this hearing, no motion, demand or challenge has ever invited a presiding judge of the district to alter the method of selecting juries that has been traditional here.

With that factual and historical background, the issue is submitted immediately to be resolved.

It must be acknowledged that nothing in the Constitution or statutes of the United States peremptorily requires the inclusion of women on jury lists in the federal courts or forbids their exclusion. Speaking by way of dictum, to be sure, but with complete accuracy, the Supreme Court has declared: "We do not say that within the limits from which it is not excluded by the (14th) amendment, a State may not

859

prescribe the qualification of its jurors, and in so doing make discriminations. It may confine the selection to males, to freeholders, to citizens, to persons within certain ages, or to persons having educational qualifications. We do not believe the Fourteenth Amendment was ever intended to prohibit this." Strauder v. West Virginia, 100 U.S. 303, 310, 25 L.Ed. 664.

■ In practical recognition of the valid distinctions in qualifications for jury service which may exist upon a local basis in a nation as large and as varied as ours, the congress has made such qualifications in the Federal Courts to depend upon the lawfully established practice within the several states. 28 U.S.C.A. §§ 411, 412, 419; Pointer v. United States, 151 U.S. 396, 406, 14 S.Ct. 410, 38 L.Ed. 208; St. Clair v. United States, 154 U.S. 134, 146, 14 S.Ct. 1002, 38 L.Ed. 936. The first cited section of the Code (which is section 275 of the Judicial Code) provides: "Jurors to serve in the courts of the United States, in each State respectively, shall have the same qualifications, subject to the provisions hereinafter contained, and be entitled to the same exemptions, as jurors of the highest court of law in such State may have and be entitled to at the time when such jurors for service in the courts of the United States are summoned." The qualifications prescribed by the law of Iowa must, therefore, be explored.

■ By Section 10842, Code of Iowa for 1939, it is provided: "All qualified electors of the state, of good moral character, sound judgment, and in full possession of the senses of hearing and seeing, and who can speak, write, and read the English language, are competent jurors in their respective counties." Section 10860 of the same Code, in forbidding the appointive jury commissions of the state to include the names of certain types of persons on jury lists, emphasizes the elimination of sex as a qualification for jury service by the frequent use of the phrase "his or her". Section 10842, which makes the status of a "qualified elector" the basic test of eligibility for jury service was a part of the statutes of Iowa at, and long prior to, the effective date of the Nineteenth Amendment to the Constitution of the United States. It has not subsequently been repealed or amended. And the Supreme Court of Iowa in criminal cases has, twice since the adoption of that amendment, held that it was effective to amend section 10842 of the Code in such manner and to such extent that women became, equally with men, qualified as jurors in the Iowa courts when by the amendment they became "qualified electors". State v. Walker, 192 Iowa 823, 185 N.W. 619; State v. Hickman, 195 Iowa 765, 193 N.W. 21. Accordingly, it is manifest that in the state of Iowa, sex has been altogether eliminated in determining the qualification of jurors, grand or petit, and that this elimination not only is now effective but has been lawfully in force since August 26, 1920, or for more than twenty-three years.

While the conclusions of the courts of last resort of states other than Iowa upon the consequence of the Nineteenth Amendment, under identical or comparable state statutes, is quite immaterial to the present inquiry, it may be noted that the view of the Iowa court is not without substantial support from other jurisdictions. Palmer v. State, 197 Ind. 625, 150 N.E. 917; Moore v. State, 197 Ind. 640, 151 N.E. 689; Wilkinson v. State, 197 Ind. 642, 151 N.E. 690; Browning v. State, 120 Ohio St. 62, 165 N.E. 566; Commonwealth v. Maxwell, 271 Pa. 378, 114 A. 825, 16 A.L.R. 1134; Commonwealth v. Valotta, 279 Pa. 84, 123 A. 681; People v. Barltz, 212 Mich. 580, 180 N.W. 423, 12 A.L.R. 520; People v. Merhige, 219 Mich. 95, 188 N.W. 454; Parus v. District Court, 42 Nev. 229, 174 P. 706; State v. Chase, 106 Or. 263, 211 P. 920. The contrary view, inapplicable here, is ably expressed in Commonwealth v. Welosky, 276 Mass. 398, 177 N.E. 656, 662, and certain of the cases therein cited and followed.

It is not presently charged that any disqualified man was a member of the challenged grand jury. The objection is not to erroneous inclusion but to allegedly wrongful exclusion. It is not contended, nor in the light of the settled law could it be successfully maintained, that because women and men are equally qualified for grand jury duty in Iowa, a grand jury is invalidly constituted if, and solely because, it actually includes no women among its members. The asserted invalidity is predicated solely on the actual, deliberate and intentional exclusion of women from such membership.

Decided authority, directly in point on the issue, is not abundant. Many of the cases usually regarded as instructive upon the question are distinguishable upon the

ground that they rest heavily on the express provisions of the Fourteenth Amendment to the Constitution of the United States in the light of its historical mission to intercept racial discrimination against negroes following their emancipation from slavery. Among such cases are those which deny the validity of indictments found and returned against negroes by grand juries, or convictions of negroes by petit juries, from service on which members of the colored race have been deliberately, arbitrarily and systematically barred. Strauder v. West Virginia, 100 U.S. 303, 25 L.Ed. 664; State of Virginia v. Rives, 100 U.S. 313, 25 L. Ed. 667; Ex parte Virginia, 100 U.S. 339, 25 L.Ed. 676; Neal v. Delaware, 103 U.S. 370, 26 L.Ed. 567; Gibson v. Mississippi, 162 U.S. 565, 16 S.Ct. 904, 40 L.Ed. 1075; Carter v. Texas, 177 U.S. 442, 20 S.Ct. 687, 44 L.Ed. 839; Martin v. Texas, 200 U.S. 316, 26 S.Ct. 338, 50 L.Ed. 497; Norris v. Alabama, 294 U.S. 587, 55 S.Ct. 579, 79 L. Ed. 1074; Hale v. Kentucky, 303 U.S. 613, 58 S.Ct. 753, 82 L.Ed. 1050; Pierre v. Louisiana, 306 U.S. 354, 59 S.Ct. 536, 83 L. Ed. 757; Smith v. Texas, 311 U.S. 128, 61 S.Ct. 164, 85 L.Ed. 84. In those and similar cases, not only the general constitutional denunciation of racial discrimination contained in the Fourteenth Amendment but also the express statutory prohibition of such discrimination with particular reference to the selection of jurors contained in Title 8 U.S.C.A. § 44, indicated the necessary duty of the court.

Upon the precise question of the effect on an indictment in a Federal Court of the exclusion of women from membership upon the indicting grand jury in a district within which they are qualified to serve as jurors, there are few cases and those are indecisive. In United States v. Ballard, D.C., 35 F.Supp. 105, upon which the government principally relies, the District Court for the Southern District of California followed the holdings of the Supreme Court of California to the effect that the provisions of the Code of that state making women eligible to jury service were "directory and not mandatory" and held that the selection by a jury commissioner and clerk in a federal court in California of a jury of one sex was within the discretionary power vested in them under Title 28 U.S.C.A. § 412. Its proper and inflexible conformity to the domestic legal policy of California renders the case only doubtfully instructive in Iowa. In Wuichet v. United States, 6 Cir., 8 F.2d 561, motions to quash two indictments for the exclusion from the grand jury of women, notwithstanding their eligibility for service thereon under the local state law, were held properly to have been denied by the trial court. But the decision can hardly be said to be directly in point with the instant case, because the motion against one of the indictments was filed after the entry of a plea of not guilty and was, therefore, untimely; and no effort was made to sustain by proof the other and seasonably filed motion until after plea of not guilty and the examination upon voir dire of the trial jury, when it was rejected as too late. The Wuichet opinion does include a discussion from which it might be argued that the judge delivering and the court approving, it would have been adversely disposed to a motion made in the present circumstances. And upon its authority, the District Court for the Southern District of Ohio, within the Sixth Circuit, regarded the question as settled in that circuit, and without discussion, overruled a motion to quash on the ground that no injury to the moving defendant had been shown, in United States v. Gilbert, D.C., 31 F.Supp. 195, 202.

Without the unnecessary accumulation of citations, it may be noted in passing that several opinions of state courts of last resort have affirmed the refusal to quash indictments in state trial courts upon the ground now asserted, although it was intimated, by way of dictum, in State ex rel. Passer v. County Board, 171 Minn. 177, 213 N.W. 545, 52 A.L.R. 916, that the contrary view might be followed by that court in an appropriate case.

But the federal authorities cited, and the state court opinions examined by this court, all antedate by several years the Supreme Court's opinion in Glasser v. United States, 315 U.S. 60, 64, 65, 83, 84, 85, 86, 87, 62 S.Ct. 457, 86 L.Ed. 680, in which an attitude of direct disfavor was intimated towards the practice pursued in this instance. In the Glasser case the legal constitution of a federal grand jury in an Illinois district was challenged, on the ground that women had been deliberately excluded from its membership. The challenge failed, not because it was necessarily ill founded as a legal criticism, but rather because the Illinois legislation opening jury service to women had been enacted only recently before the assembling of the grand jury and under its own terms was not yet of uni-

versal application throughout the counties within the federal district. The grounds for the ruling asserted in the syllabus are "the short time elapsed since the state law came in force, and the absence of any showing that women's names had appeared on the state jury lists in the counties comprising the federal district." The defendants in the Glasser case had been tried before a petit jury composed of both men and women; but upon appeal they objected that the women upon the panel had been selected entirely from the membership of a certain women's civic group. This attack also failed in the Supreme Court, not because it was devoid of legal merit, but because it was without adequate factual support.

■■ The language of the Glasser opinion in the course of its discussion of the issue touching the petit jury demands attention. Among other similar comments are the following:

"Jurors in a federal court are to have the qualifications of those in the highest court of the State, and they are to be selected by the clerk of the court and a jury commissioner. Secs. 275, 276, Jud.Code, 28 U.S.C. secs. 411, 412, 28 U.S.C.A. §§ 411, 412. This duty of selection may not be delegated. United States v. Murphy, D.C., 224 F. 554; In re Petition For Special Grand Jury, D.C., 50 F.2d 973. And, its exercise must always accord with the fact that the proper functioning of the jury system, and, indeed, our democracy itself, requires that the jury be a 'body truly representative of the community', and not the organ of any special group or class. If that requirement is observed, the officials charged with choosing federal jurors may exercise some discretion to the end that competent jurors may be called. But they must not allow the desire for competent jurors to lead them into selections which do not comport with the concept of the jury as a cross-section of the community. Tendencies, no matter how slight, toward the selection of jurors by any method other than a process which will insure a trial by a representative group are undermining processes weakening the institution of jury trial, and should be sturdily resisted. That the motives influencing such tendencies may be of the best must not blind us to the dangers of allowing any encroachment whatsoever on this essential right. Steps innocently taken may one by one lead to the irretrievable impairment of substantial liberties.

"The deliberate selection of jurors from the membership of particular private organizations definitely does not conform to the traditional requirements of jury trial. No matter how high principled and imbued with a desire to inculcate public virtue such organizations may be, the dangers inherent in such a method of selection are the more real when the members of those organizations from training or otherwise acquire a bias in favor of the prosecution. The jury selected from the membership of such an organization is then not only the organ of a special class, but, in addition, it is also openly partisan. If such practices are to be countenanced, the hard won right of trial by jury becomes a thing of doubtful value, lacking one of the essential characteristics that have made it a cherished feature of our institutions.

"So, if the picture in this case actually is as alleged in Glasser's affidavit, we would be compelled to set aside the trial court's denial of the motion for a new trial as a clear abuse of discretion, and order a new trial for all the petitioners. But from the record, before us we must conclude that petitioners' showing is insufficient."

■ The government here asserts that, in the light of its actual judgment, the Supreme Court's discussion in the Glasser case respecting both the grand jury and the petit jury is dictum and may be disregarded. That it is dictum may be allowed: but it does not necessarily follow that it may properly—much less prudently—be disregarded. The considered dicta of a court of last resort are entitled to the respectful recognition of inferior courts within the same judicial system. Arrigo v. Commonwealth Casualty Co., D.C.Md., 41 F.2d 817. What, in an isolated opinion, may be dictum has a way of being translated shortly by the court asserting it into settled law. Besides, this court is persuaded that the discussion, quite apart from its necessity to the decision evoking it, is objectively well grounded.

■ A related argument is made that the defendant now before the court ought not to be heard to make the tendered objection because he has not shown that he has been injured by the manner of selecting the grand jury. This court acknowledges the rule, declared in many hundreds of cases, that indictments will not be set

aside capriciously nor, specifically, in the absence of any showing of injury to the moving defendant. That rule is unquestioned, but its application cannot be allowed to sustain and perpetuate the arbitrary perversion by administrative authority of the plain mandate of the law on a fundamental question.

Upon an indefensible basis, an identified one-half or more of those eligible to jury service in this district have been arbitrarily excluded from such service, not by accident or inadvertence, but by design. Such action is operative to destroy the basic democracy and classlessness of jury personnel. It results in the consistent selection of jurors from a group or portion only of those available for service in that office, rather than from those eligible without discrimination. And that does not accord to the defendant the type of jury to which the law entitles him. It is an administrative denial of a right which the lawmakers have not seen fit to withhold from, but have actually guaranteed to him.

Nor is this court impressed by the argument of the government that the relief demanded by the defendant should be denied because he is a male person, though it might be granted if he were a woman. It is true that the contention finds substantial and explicit support in many decisions. It is frequently sustained by the citation of authority holding that, though a negro may object, under an inference of prejudice, to an indictment returned against him by a jury from which members of his race have been systematically excluded, a white man may not object to his indictment by the same jury because he is not prejudiced by the exclusion from his accusing jury of an alien race. Even in the cases last mentioned, one may discern both an unnecessary quest for specific injury to the moving defendant, and an indefensible flight from reality. Historically, it is not demonstrable that, either now or in the era of post-rebellion reconstruction in the states which produced the decisions, the plight of a negro before a grand jury where unanimity is not required, would be preferable if it included one or more but less than a predominant number, of the members of his race, instead of being selected entirely from the white race. Cold, practical realism rather denies the advantage. The surer ground of decision in addition to the explicit constitutional and statutory mandates would seem to be the purposeful denial of that degree of detachment and impartiality which the law contemplates in the selection of juries; whereby injury actually results to the state, to the law as an institution, and to the individual both as a member of society and as a defendant immediately under the scrutiny of the jury.

But admitting—as a judge must admit—the authoritative reasoning of the courts affirming direct and personal injury in cases involving exclusion upon the ground of race, this court is unwilling to agree that the same conclusion follows upon discrimination resulting in the exclusion of one sex from jury service. Such a conclusion must rest upon the premise that in the administration of criminal justice each sex may logically be expected to deal more charitably and tolerantly with its own members than with those of the opposite sex. The presumption urged is not inevitable; indeed, it may be argued upon many concrete precedents, some ancient, others very modern, to be quite unfounded. Here again, instead of resting upon an hypothesis that is historically and psychologically dubious, one would seem to be on firmer ground who inquires simply whether the defendant has been indicted by a grand jury selected as he had the right under the law to expect and require it to be selected. That inquiry answered negatively, the indictment ought to fail, without requiring the doubtfully possible proof of concrete injury to the moving defendant.

The government of the United States, by which the rights of its citizens under the law should be jealously guarded, cannot itself be allowed the optional privilege of lawlessness in bringing those citizens before the bar of justice. It must not violate the law which it promulgates for the preservation of its own existence and majesty and dignity; and then demand that its courts resolve in its favor a doubt whether its violation of the rights of the citizen has subjected him to practical injury.

The court is satisfied that if, when the grand jury that returned the present indictment was convened at Sioux City, the defendant had appeared before the court and challenged its regularity and legality, the court should have sustained the challenge and dismissed the jury. A contrary position would lead to the absurd denial of the power of a citizen to insist upon the

orderly selection of grand juries bent upon inquiry into his deportment. This defendant could not have made that challenge. He was confined in jail at Cedar Rapids some hundreds of miles distant from Sioux City, unable to provide bail and aware, only in the manner of an uninitiated layman, of the likelihood of his early prosecution, and not at all of its mechanical details. Today presents him with his first practical opportunity to assert the invalidity which a more favorably circumstanced defendant might have presented at Sioux City. He will be dealt with accordingly.

The motion to quash is sustained.