**THIEL v. SOUTHERN PAC. CO.**

No. 21780.

District Court, N. D. California, S. D.

Aug. 28, 1946.

Allen Spivock and Philander B. Beadle, both of San Francisco, Cal., for plaintiff.

A. B. Dunne, of San Francisco, Cal., for defendant.

HARRIS, District Judge.

Plaintiff has filed herein a notice of motion for an order: "(a) Striking out or quashing the entire jury panel for the 'July Term, 1946', which is to be used for trial of this action, now set for September 10, 1946; (b) Directing the Clerk and Jury Commissioner of this Court to select a new panel which will be a fair, democratic cross-section of the community without discrimination in favor or against any one group or class of citizens because of their wealth, occupation, sex or race; and (c) Directing the 'parts of the district' of this Court from which 'jurors shall be returned' 'so as to be most favorable to an impartial trial.' "

In support of the motion, movant filed a purported affidavit of. Attorney Allen Spivock. This affidavit was not offered or received in evidence. In all events the plaintiff can rely only on the showing made by the evidence ore tenus. It is incumbent on the moving party to introduce, or to offer, distinct evidence in support of the motion; the formal affidavit alone, even though uncontroverted, is not enough. Glasser v. United States, 315 U.S. 60, 87, 62 S.Ct. 457, 86 L.Ed. 680, 708.

Before taking up the several asserted grounds in support of the motion, and in order to appreciate this more · recent at-

tack upon the jury system in this court, the history of the litigation should be given:

On December 30, 1940, plaintiff brought an action against the defendant, Southern Pacific Company, for damages in the sum of $250,000 for injuries resulting from a leap from a train. The complaint in substance and effect alleged that plaintiff was "out of his normal mind" on February 25, 1940; that, before accepting plaintiff as a passenger, defendant was informed that he was "out of his normal mind" and therefore should not be accepted as a passenger or else should be guarded; that defendant, Southern Pacific Company, nevertheless accepted plaintiff as a passenger, left him unguarded and when he leaped failed to stop the train before he fell to the ground; that defendant's conduct constituted alleged negligence and caused plaintiff's alleged injuries.

The action was originally instituted in the Superior Court of the State of California, in and for the City and County of San Francisco. On petition of the defendant it was removed from that court to the District Court of the United States for the Northern District of California. The defendant answered, and in substance and effect denied that plaintiff was "out of his normal mind;" denied that said defendant was informed that plaintiff was "out of his normal mind" and therefore should not be accepted as a passenger, or else should be guarded; and denied that defendant was guilty of any negligence, and affirmatively alleged that plaintiff's injuries were caused by his own negligence; as a separate defense it was alleged that his injuries were attributable to his own negligence.

Plaintiff filed a written demand for a jury trial in the District Court, and thereafter moved said Court to remand the action to the Superior Court. The motion was denied. Thereafter, disregarding the refusal to remand, plaintiff attempted to prosecute the action in the said Superior Court. Defendant applied for, and after a hearing, obtained from the District Court a judgment enjoining such prosecution. The judgment was affirmed. 9 Cir., 126 F.2d 710. Certiorari to review the decision was thereafter denied. 316 U.S. 698, 62 S.Ct. 1295, 86 L.Ed. 1767.

The action was thereafter assigned to trial in the District Court. A panel of prospective jurors was drawn, and the jury was thereupon and thereafter impaneled. On November 5, 1942, plaintiff challenged the array—the panel of prospective jurors drawn as aforesaid. The challenge was overruled. Thereafter plaintiff amended his complaint alleging in substance and in effect that defendant was negligent in failing to give him first aid treatment and medical attention at the scene. These allegations were denied.

Thereafter plaintiff moved the Court to strike his demand for a jury trial. The motion was denied.

Trial of the action was commenced on November 24, 1942. After the jury was impaneled and sworn plaintiff challenged the twelve jurors comprising it. The challenge was overruled and the trial proceeded. At the close of the evidence plaintiff moved the Court for a directed verdict; the motion was denied. The jury thereafter returned a verdict for the defendant, Southern Pacific Company. Plaintiff thereafter moved for a new trial, and also moved to take depositions; both of said motions were denied. Judgment was entered for the defendant.

Plaintiff prosecuted his appeal, Thiel v. Southern Pacific Company, 9 Cir., 149 F.2d 783, and therein specified as error the overruling of his challenge to the array. The challenge was based in substance and effect on practically, if not all, the same grounds urged in the motion before this Court. The judgment was affirmed in its entirety.

On certiorari review was had before the Supreme Court of the United States "limited to the question of whether petitioner's motion to strike the jury panel was properly denied." Thiel v. Southern Pacific Co., 66 S.Ct. 472; Id., 66 S.Ct. 984, 985.

The Supreme Court, speaking through Mr. Justice Murphy, held, in effect, that the intentional exclusion of daily wage earners from the jury list required the reversal, regardless of whether the plaintiff

was prejudiced by the wrongful exclusion or whether he was one of the excluded class, even though the jury which actually decided the factual issues was found to contain at least five members of the laboring class.

Mr. Justice Frankfurter and Mr. Justice Reed, dissented. The Court said, in part:

"It is clear that a federal judge would be justified in excusing a daily wage earner for whom jury service would entail an undue financial hardship. But that fact cannot support the complete exclusion of all daily wage earners regardless of whether there is actual hardship involved. Here there was no effort, no intention, to determine in advance which individual members of the daily wage earning class would suffer an undue hardship by serving on a jury at the rate of $4 a day. All were systematically and automatically excluded." 66 S.Ct. 984, 987.

It was not claimed before the Supreme Court that the District Court Judges for the Northern District of California, with the approval of the Circuit Court Judges, designed racial, religious, social, or economic discrimination to influence the make-up of jury panels, or that such unfair influence infused the selection of the panel, or was reflected in those who were chosen as jurors. Nor was there any suggestion that the method of selecting the jury was an innovation. The challenge went to a practice adopted in order to deal with the special hardship which jury service entailed for workers paid by the day. What was challenged, in short, was not a covert attempt to benefit the propertied but a practice designed, wisely or unwisely, to relieve the economically least secure from the financial burden which jury service involves under existing circumstances. 66 S.Ct. 984, 988.

Several other grounds raised and presented by petitioner (plaintiff herein) were in substance and effect identical with those presently urged. They were given no mention in any of the Justices' opinions.

With that historical background of the case established, it is now proper to refer to the more recent events.

On Thursday, June 6, 1946, in the District Court of the United States for the Northern District of California, Southern Division, before Hon. Louis E. Goodman and Hon. Michael J. Roche, the matter of the selection of master trial and grand jury panels for July, 1946 Term of Court came on regularly to be heard at the hour of 4 o'clock P.M., in compliance with Section 276, as amended, of the Judicial Code, 28 U.S.C.A. § 412. At that time the Court announced that it was deemed advisable to hold a session so that there could be a public drawing of the jurors.

The hearing was duly noticed in "The Recorder" of Thursday morning, June 6, 1946. The "Recorder" is a newspaper of general circulation and the official organ of the court. Carl W. Calbreath, Clerk of the Court, and William C. Mikulich, the Jury Commissioner, were called to testify with respect to the manner of drawing the jurors. The Clerk testified in substance: That he and the Jury Commissioner collaborated in the selection of the names that were placed in the box; that the box contained 484 names; that the sources were three—the list of registered voters of the Counties of San Francisco, San Mateo, Alameda and Marin; the city directories of San Francisco and Oakland; and the telephone directories of other cities in the counties named. That he went to the Deputy Registrar of Voters of San Francisco and obtained a list for the year 1943, thence to the County Clerk in Oakland and obtained a complete list of the Alameda County registered voters down as far as Hayward for the year 1944; thence to Redwood City and obtained a list of registered voters for San Mateo County as far south as Redwood City and this side of the range of mountains; also that a list of the registered voters of Marin County was obtained; that approximately 50% of the names placed in the box were secured from the lists of registered voters; and that the remaining 50% were derived from the city directories of San Francisco and Oakland, and the telephone directories of cities in the other counties named.

After satisfying the Court that the sources of the names were such as "to be

most favorable to an impartial trial, and so as not to incur an unnecessary expense, or unduly burden the citizens of any part of the district with such service," (28 U.S.C.A. § 413), Judge Louis E. Goodman then continued the interrogation of the Clerk:

"Q. How did you determine whether or not a person whose name was to be picked might be ineligible for jury duty under the provisions of the law? A. I would have to depend on the description given in the directory or the list of the registered voters of the occupation of the person I selected.

"Q. As between men and women did you use any method of procedure to secure any particular number of men as against women jurors? A. I endeavored to obtain fifty per cent men and fifty per cent women.

"Q. Did you leave out of the jury box the name of any juror whom you had selected because of any special occupation that he might have had aside from those occupations that are made exempt under the law? A. No, I did not.

"Q. Was any person left out because of color or race or creed or occupation? A. They were not.

"Q. What method did you follow in order to secure a cross section selection of jurors as regards occupation or status or color or the like? A. I endeavored each time to select approximately half of the proposed jurors from the working class; by that I mean I made no distinction between those working for a daily wage as against those who worked for a weekly or monthly wage. That applies to women as well as men. The other fifty per cent that made up the list were made up of some of the executives or managers of firms or presidents or owners of business; the colored population was taken into consideration; we put from 15 to 20 colored people in the jury box and also put the same number of Chinese into the jury box.

"Q. Have you any way of knowing or did you keep any record as to the percentage of names deposited in the jury box that are residents of San Francisco as against the other counties in this district? A. Yes, approximately one half of the names I selected are residents of San Francisco, one quarter are residents of Alameda County and one quarter are residents of the counties of Marin and San Mateo.

"Q. Were there any names remaining in the box at the time that you deposited the names of the prospective jurors that you have referred to? A. Yes; there was always an average of about one hundred such names remaining in the box when we filled it.

"Q. So that when you filled the jury box this time you put in approximately 380 odd names: is that correct? A. That is correct.

"Q. And of those you put in approximately one half and Commissioner Mikolich put in the other half: is that correct? A. That is correct.

"Q. When you selected names in San Francisco from the list of registered voters did you follow any plan or method with respect to selecting jurors from different assembly districts? A. I tried to pick a proportionate number of persons from each of the assembly districts in San Francisco.

"Q. And did you make any use of the precinct lists? A. I did. I took the precinct list from each assembly district, and, as I said, I started at the top and went down and found the name of a person that was not exempt and then I went on further and took another one, and then took another precinct list in the same district and did the same thing.

"Q. After you had selected the names from the various sources that you have mentioned, did you make any check to see whether or not any of the names that you had picked was ineligible because of recent service as grand or petit jurors? A. I did.

"Q. Or those who had been previously excused because of physical condition or age? A. I did. I checked the list with the names remaining in the box; with the names on the present trial and grand jury; with the names of persons who had served previously and been discharged, and then with those who had been excused previously on account of age, sickness or physical reasons.

"Q. In placing the names in the box did you and the Jury Commissioner place them in alternately? A. We did."

Thereafter the Jury Commissioner, Mr. Mikulich, was interrogated and stated in substance and effect that the procedure he adopted was identical in all respects with that of the Clerk.

The Court thereafter made the following finding:

"The court finds that the names of the four hundred and eighty four prospective jurors for the July, 1946, term of court, have been properly selected by the Clerk and the Jury Commissioner, as provided by Section 276 of the Judicial Code, as amended."

The testimony elicited from the Clerk has been set forth at some length for the reason that it demonstrates a careful compliance with the views of the Supreme Court in connection with the avoidance of any distinction "between those working for a daily wage as against those who work for a weekly or monthly wage;" and, in addition, is demonstrative that the Statutes, 28 U.S.C.A. § 412 et seq. were fully complied with.

With that factual background established, the motion heard on August 19, 1946, before this Court may be analyzed: Plaintiff asserted the following grounds in substance: (1) That the majority of those selected for the jury were business men, etc., and that a small majority of those selected were working men; (2) that a large proportion of the men jurors were selected as compared with women jurors; (3) that no court orders or directions had been given to the Jury Commissioner or the Clerk of Court directing "the parts of the District from which the jurors shall be returned;" (4) that uniform rules were not made for the guidance of the Clerk and Commissioner in the drawing of the said jurors; (5) that no substantial changes in the method of selecting the jurors had been made and that the said decision of the Supreme Court had not been complied with; (6) that a large majority of the persons selected were prejudiced in favor of the defendant Company; (7) that the Jury Commissioner and said Clerk have en-deavored to obtain jurors of the highest or superior intelligence and not those of "ordinary intelligence"; (8) that no system of lot or chance was used in selecting said jurors.

On the hearing of this motion the proceedings of June 6, 1946, referred to, were made a part of and read into the record. Counsel for plaintiff claimed that he did not receive notice of said proceedings.

Notice was not necessary and the hearing was "public" within the contemplation of the statute. 28 U.S.C.A. § 412, Judicial Code, § 276, amended; Hammerschmidt v. United States, 6 Cir., 287 F. 817; United States v. Lewis, D.C., 192 F. 633.

The plaintiff then called the Clerk and also the Jury Commissioner, subjecting them to lengthy examination. In substantial particulars their testimony was in consonance with the former testimony on the proceedings of June 6, 1946.

It would seem unnecessary to dilate upon, or otherwise give particular attention to, the several grounds urged, for they are in the main unsubstantial and fully answered by the Federal Statutes applicable: 28 U.S.C.A. §§ 411, 412 et seq.

It is evident from a reading of the transcript of the foregoing proceedings, and from the excerpt hereinabove set forth, that strict compliance was given to the decision, mandate and direction of the Supreme Court, i. e.—*that daily wage earners be included in the panel.*

However, I will discuss plaintiff's points, seriatim:

(1 and 2) Both the Clerk and the Jury Commissioner emphasized in their testimony that the daily wage earners had not been excluded. On the contrary appropriate provision was made for this group.

Mr. Mikulich, the Jury Commissioner, in interpreting the groups classified under business, as compared with labor, detailed that the former included those connected with business as department heads, clerks, salesmen and solicitors, and their wives. In short, the business group representing approximately 50% of the panel did not

comprise all proprietors, managers and officials.

Mr. Calbreath, the Clerk of the Court, in his examination was very clear to point out that he sought to equalize occupations. Admittedly, he did not go to the San Francisco Chamber of Commerce for information, and this was not incumbent upon him. Plaintiff attempted in Exhibit No. 1 (Economic Survey, San Francisco Bay Area, 1945) to demonstrate that 11.14% of the population represented proprietors, managers and officials, and therefore it was argued that the total number of jurors drawn or "selected" from said group was disproportionate. Counsel for plaintiff has misconceived or misinterpreted the figures. According to the survey it appears: "San Francisco ranks high among large cities with nearly 55% of its entire resident population in the labor force." The other 45% necessarily represented proprietors, managers, officials, clerical, sales, kindred workers and others not identified with the laboring groups.

Although the Clerk and the Commissioner testified that this statistical data was not available to them when the names were selected for the panel, nevertheless the evidence demonstrates that the names as drawn by them represented an impartial panel from a cross-section of the community. The Clerk testified: "I endeavored each time to select approximately half of the proposed jurors from the working class; by that I mean I made no distinction between those working for a daily wage as against those who worked for a weekly or monthly wage."

Plaintiff is laboring under a serious misconception in declaring that "in the Superior Court of the State of California, whose jury qualifications control here, an equal percentage of men and women are now selected." Citing Pointer v. United States, 151 U.S. 396, 405–409, 14 S.Ct. 410, 38 L.Ed. 208; United States v. Roemig, D.C., 52 F.Supp. 857.

The Pointer case is not authority for the proposition that the United States District Courts are controlled by the procedure, rules or practices of the State courts. It is only in connection with the qualifications and exemptions of jurors to serve in the courts of the United States that the statutes of the State are at all applicable. The Court therein said:

"There is nothing in these provisions sustaining the objection made to the mode in which the trial jury was formed. In respect to the qualifications and exemptions of jurors to serve in the courts of the United States, the state laws are controlling. But congress has not made the laws and usages relating to the designation and impaneling of jurors in the respective state courts applicable to the courts of the United States, except as the latter shall by general standing rule or by special order in a particular case adopt the state practice in that regard. United States v. Shackleford, 18 How. 588 [15 L.Ed. 495]; United States v. Richardson, C.C., 28 F. 61, 69. In the absence of such a rule or order, (and no such rule or order appears to have been made by the court below,) the mode of designating and impaneling jurors for the trial of cases in the courts of the United States is within the control of those courts, subject only to the restrictions congress has prescribed, and also to such limitations as are recognized by the settled principles of criminal law to be essential in securing impartial juries for the trial of offenses." 151 U.S. 396, 14 S.Ct. 410, at page 414, 38 L.Ed. 208.

In Albizu v. United States, 1 Cir., 88 F.2d 138, 140, the Court said:

"As to the assignment of errors relating to the selection of the jury, there is only one act of Congress relating to the drawing of jurors in the federal courts which requires that the persons who are summoned as jurors must be drawn publicly from a box containing at least 300 names. Other than this, unless a federal court shall, by order, adopt the state practice, the method of selection is within the control of the federal courts, subject to any limitation placed thereon by Congress, or recognized by the settled principles of criminal law essential to securing an impartial jury. Pointer v. United States, 151 U.S. 396, 405–409, 14 S.Ct. 410, 38 L.Ed. 208."

The District Courts for the Northern District of California have not, by rule or

order, adopted the State practice in this connection.

Reference is made by the moving party to United States v. Roemig, D.C., 52 F. Supp. 857, 858. The specification of invalidity therein made was that women were intentionally and systematically excluded from membership on a grand jury. The Court, although acknowledging that "nothing in the Constitution or statutes of the United States peremptorily requires the inclusion of women on jury lists in the federal courts or forbids their exclusion," granted the motion to quash the indictment after a review of the authorities including dictum in Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680, and contra, United States v. Ballard, D.C.S.D. Cal., 35 F.Supp. 105; affirmed 9 Cir., 152 F.2d 941; certiorari granted 66 S.Ct. 816.

The rule announced in the Roemig case was simply to the effect that a grand jury on which women were systematically and intentionally prevented from serving by manner of selecting members was invalidly constituted.

■■ There is no rule, statute or decision requiring that the jury list or panel be composed or constituted of 50% women and 50% men.

It appears from the testimony of both the Clerk and the Commissioner herein that they "endeavored to obtain 50% men and 50% women."

Many prospective women jurors after their names are drawn submit adequate reasons for their excusal by the District Judge, which necessarily involves an exercise of judicial discretion. This latter procedure obviously is not integrated with the drawing of the jurors in the first instance by the Clerk and the Commissioner. The fact that ultimately there were more men than women on the panel is immaterial.

■ (3) Ground 3 turns on the construction of Judicial Code, § 277, 28 U.S.C.A. § 413. The statute is explicit. "Jurors shall be returned from such parts of the district * * * as the court shall direct * * * so as not to incur an unnecessary expense, or unduly burden the citizens of any part of the district."

It is contended that "no court orders or directions had been given to the Jury Commissioner or the Clerk directing the parts of the district from which the jurors shall be returned." The Judges were not required to prescribe such directions or orders and no apportionment was required. It is discretionary with the Court to give or not, at its pleasure, any direction as to the summoning a jury from a part of a district. The Court can "draw and summon jurors from the entire district" but "it was not necessary, however, that this be done." Lewis v. United States, 279 U.S. 63, 72, 49 S.Ct. 11, 73 L.Ed. 615, 619; Agnew v. United States, 165 U.S. 36, 42, 17 S.Ct. 235, 41 L.Ed. 624, 626; Ruthenberg v. United States, 245 U.S. 480, 482, 38 S.Ct. 168, 62 L.Ed. 414, 418.

■ Selection of jurors to sit in San Francisco was limited to those within convenient travel distance. It appeared that it was the rule and practice of the court, going back to 1912, to restrict names put in the jury box to those of people who lived within commuting distance of the court, but within that area, there was no discrimination against any locality.

That practice was maintained and approved under the *direction* of the Court at the hearing "In re selection of Master Trial and Grand Jury Venire on June 6, 1946, for the July 1946, Term of Court," before District Judges Louis E. Goodman and Michael J. Roche.

■ (4) The Judges of the District Court were not required to prescribe rules for the guidance of the Clerk and Commissioner. Congress has promulgated the rules and the statutes are clear and explicit. 28 U.S.C.A. §§ 411, 412 et seq. The machinery for putting names into a jury box which shall contain not less than 300 names from which the panel shall be drawn by lot, has been directly prescribed by Congress. The names are to be placed in a box by the Clerk of the District Court, and a Commissioner to be appointed by the Senior District Judge. 28 U.S.C.A. § 412.

■ Under the Federal Statutes the preparation of the jury list is a non-delegable duty of the Clerk (or his deputy) and the Jury Commissioner. This duty calls for

the exercise of judgment. They necessarily have committed to them a discretion in making selection of names from which to draw. In Glasser v. United States, 315 U.S. 60, 85, 62 S.Ct. 457, 472, 86 L.Ed. 680, 707, the Court said:

"Jurors in a federal court are to have the qualifications of those in the highest court in the State, and they are to be selected by the clerk of the court and a jury commissioner. Secs. 275, 276, Jud.Code, 28 U.S. C.A. §§ 411, 412. This duty of selection may not be delegated."

■ All that is called for on their part is an honest and unbiased effort to obtain a jury list from which no class has been purposefully and systematically excluded because of class prejudice.

■ In the instant case the Clerk and Jury Commissioner discharged their statutory functions impartially, according to law and in the exercise of a sound discretion.

■ (5) The contention that the "decision of the Supreme Court had not been complied with" is entirely without merit. The testimony of the Clerk and Jury Commissioner is clear and convincing that the jurors were impartially selected and drawn and represented a cross-section of the community. Further, that there was no systematic or intentional exclusion of any group, particularly those engaged in working for a daily wage. Thiel v. Southern Pacific Co., 66 S.Ct. 984, 986.

■ (6) The asserted ground that a "majority of the persons selected were prejudiced in favor of the defendant Company" is equally without merit. There is no evidence that the persons whose names were selected and placed in the box by the Clerk and Jury Commissioner, were biased or otherwise prejudiced.

■ Counsel for the movant cannot supply evidence by the mere assertion of reckless charges and unfounded supposition. The burden of proof rests upon him and must be supported by competent evidence. It is the settled rule that all necessary prerequisites to the validity of official action are presumed to be complied with and where the contrary is asserted it must be affirmatively shown. Lewis v. United States, 279 U.S. 63, 49 S.Ct. 257, 73 L.Ed. 615, 619.

■ (7) There is no evidence before this Court that the Jury Commissioner and Clerk sought "jurors of the highest or superior intelligence and not those of 'ordinary intelligence'."

It appears that these officials acted honestly, impartially and without bias in processing and selecting the names which eventuated in the jury list; in so doing they were guided by the statutes, Federal and State, as applicable, under the direction of the District Court.

Jury lists are not conceived out of thin air. The non-delegable duty of preparing them rests with the Clerk and Commissioner. The evidence adduced at the hearing before this Court points unerringly to a painstaking effort on their part to discharge their official obligation.

■ An allegation of discriminatory practice in selecting a jury panel challenges an essential element of proper judicial procedure—the requirement of *fairness* on the part of the judicial arm of the Government. It cannot be lightly concluded that officers of the courts disregard this accepted standard of justice. Akins v. Texas, 325 U.S. 398, 65 S.Ct. 1276, 1278, 1279, 89 L.Ed. 1692.

■ (8) Specification or ground 8 is answered by reference to the statutes alluded to. Congress has outlined a specific procedure which was carried out in the selection and drawing of the jury panel under attack.

For the foregoing reasons, it is hereby ordered that: Plaintiff's motion to strike and quash the entire jury panel for the July, 1946, Term; for an order directing the Clerk and Jury Commissioner to select a new panel; for an order directing the parts of the District from which jurors shall be returned, be, and the same is hereby denied.